BELLE BUTLER, Appellant, v. MONTGOMERY GRAIN COMPANY et al., Respondents.

**Kansas City Court of Appeals, June 11. 1900,**

1. **Corporations: TRANSFER OF STOCK: LEGAL AND EQUITABLE OWNER.** Plaintiff secured D. to purchase stock in the defendant corporation. D. took the stock in the name of S. who at the same time transferred the certificates to plaintiff but it remained on the stock books in the name of S. Held, when the stock was issued S. was the legal owner, and plaintiff the equitable owner, and on the delivery of the indorsed certificate became the legal owner, and D. had no interest either legal or equitable in the stock.

2. ———: ———: LIEN. If a corporation have power to charge stock with a lien for the holder's indebtedness, that lien will not prevent the transfer of the stock free from such claim to one without notice thereof.

3. ———: ———: ———: PRINCIPAL AND AGENT. Where the agent, during the time he is purchasing corporation stock for his principal, has independent transactions with the corporation in which he acts for himself, and against his principal's interest, his knowledge of such transaction can not be attributed to his principal.

4. ———: ———: ———: EQUITY. On the facts in this case there arises in favor of the defendant no equitable consideration for the enforcement of their secret lien against the stock purchased by the plaintiff's money.

Appeal from the Jackson Circuit Court.—*Hon. James Gibson*, Judge.

REVERSED AND REMANDED (*with directions*).

*F. M. Black* and *J. C. Rosenberger* for appellant.

(1) Having issued the stock to Smithson, defendants waived the by-law as to Downs and are estopped from now claiming that the stock belonged to Downs. Bank v. Bank, 105 U. S. 217; Moore v. Bank, 52 Mo. 377; Stebbins v. Ins. Co., 3 Paige (N. Y.) 350; Hill v. Bank, 45 N. H. 300; 15 Am. and Eng. Ency. of Law p. 621, n. 7. (2) The right of alienation is an incident of property, and a by-law of a corporation prohibiting the alienation of its stock until all debts of the stockholder have been paid is void as against one who has bought the stock without notice of such by-law, being in restraint of trade, against public policy and tending to encourage secret liens. Bank v. Durfee, 118 Mo. 432; Trust Co. v. Home Co., 118 Mo. 448; Wilson v. Railroad,

108 Mo. 588; Bank v. Richards, 74 Mo. 77; Moore
v. Bank, 52 Mo. 377; Springs Co. v. Harris, 20
Mo. 382; Withers v. Bank, 67 Mo. App. 115; Watson
v. Woody Co., 56 Mo. App. 145. (3) It is the
duty of the corporation to give notice of such by-law by
printing it on the face of the certificate of stock or in some
other appropriate manner, and a failure to do so is a waiver
of the by-law. It owes this duty to the public. Trust Co.
v. Home Co., 118 Mo. 448; Keller v. Eureka Co., 43 Mo.
App. 87; Thompson on Corp., sec. 2334. (4) The print-
ing on the stock certificate of the words "Transferrable
only on the books of the company," does not confer such
notice. Trust Co. v. Home Co., 118 Mo. 448. (5) Such
a by-law must be strictly construed and should not be ex-
tended beyond its literal terms. Trust Co. v. Home Co.,
118 Mo. 448 and cases cited *supra*. (6) Assuming that
Downs had knowledge of the by-law, this is not notice to
plaintiff, because when Downs acquired such knowledge he
was not acting for plaintiff, but for himself in his own in-
terest and solely for his own benefit. Mechem on Agency,
secs. 723, 787; Smith v. Farrell, 66 Mo. App. 8; Hickman v.
Green, 123 Mo. 165; Bank v. Lovitt, 114 Mo. 519; Surety
Co. v. Pauly, 170 U. S. 133; Knobeloch v. Bank, 50 S. C.
259; Thompson-Houston Co. v. Capitol Co., 65 Fed. Rep.
341; Reed v. Doak, 22 U. S. App. 669. (7) At the time,
Downs became indebted to the company, and long before, the
stock was not in his possession; he had no *indicia* of au-
thority from plaintiff, and if defendants relied on his unsup-
ported assertions, they did so at their peril. Henson v.
Keet & Roundtree Co., 48 Mo. App. 214; Keown v. Vogel,
25 Mo. App. 39; Barnard v. Campbell, 55 N. Y. 456;
Mecham on Agency, secs. 785, 787.

*Muckle & Hayward, Ellis, Reed, Cook & Ellis* for respondents.

(1) Since Downs was the real owner of the stock, Smithson merely having the naked legal title, the lien created by the by-law attaches to it for the payment of Downs' indebtedness to the company. 23 Am. and Eng. Ency. of Law, sec. 2, p. 693; Stebbins v. Ins. Co., 3 Paige (N. Y.) 350; Ins. Co. v. Bank, 63 Ala. 585. (2) If plaintiff purchased the stock she was an undisclosed principal. The Montgomery Grain Company sold the one-third interest in their business represented by the certificate of stock, to Downs as principal, and he bought as principal and received credit and a salaried position of trust and confidence on the strength of his being the principal, and equity will treat him as the principal and the stock as his in fact, until the claims of the Montgomery Grain Company are satisfied. Mechem on Agency, secs. 773, 774, 775, 777; Henderson v. Botts, 56 Mo. App. 141. (3) Plaintiff's interest in the certificate of stock is subject to the lien on it securing the indebtedness of Downs to the grain company, whether he be considered as the real purchaser or as the agent of an undisclosed principal; and his admissions and declarations made prior to June 2, 1898, while she continued to hold him out as owner of the stock, and herself remained an undisclosed principal, is sufficient to fix the amount of the indebtedness chargeable against the stock. Until that time equity treats him as the owner of the stock and treats her as having acquired no interest as against defendant grain company. Mechem on Agency, *supra*; Henderson v. Botts, *supra*; 1 Am. and Eng. Ency. of Law (2 Ed.), p. 680 et seq.

ELLISON, J.—The plaintiff brought her bill to enjoin defendants from refusing her access to the books of the

defendant corporation of which she claimed to be a stockholder; and that the said corporation, its officers and agents be compelled to permit plaintiff to record a transfer to her of her stock on the books of the company and that they issue to her in her own name a certificate of stock in lieu of that which had been transferred to her. A temporary injunction was granted, but afterwards on a hearing it was dissolved by the trial court and plaintiff has appealed.

Each party has given a complete statement of the facts from their respective standpoints from which we have obtained a full history of the cause. But it will not be necessary, in the view we take of the case, to set them out in detail.

The plaintiff had some surplus money which she desired to invest in some profitable business or enterprise. She was acquainted with H. S. Downs, one of defendants, and he learned she had the money and of her desire to invest it. He suggested that she purchase a part of the stock of the defendant corporation. She finally concluded to do so and gave her check to Downs for $3,333.33 with which to purchase thirty-three and one-third shares of the stock, being one-third of the total capital stock of $10,000. Plaintiff being then engaged in the employ of a competing grain company conceived the idea that if it appeared that she was a stockholder in another company it might embarrass her with her employers. So she desired that the stock be issued to another (it does not appear whether to Downs or some other) and indorsed to her, she seeming to be impressed with the idea that corporate stock could be handled in that way as readily as if it was a note. Downs took the stock out in the name of H. D. Smithson, who was his father-in-law, and the latter afterwards, on the same day, indorsed it to plaintiff. It was not transferred on the books of the company. Downs became indebted to the company in the sum of about $1,500, and plaintiff also became indebted in a small amount

which she has and does offer to pay. The company claims a right to hold the stock as security for the payment of Downs' indebtedness—claims a lien thereon.

Defendant's position is that plaintiff loaned the money to Downs to make the purchase for himself and that the stock was his absolutely; or that she authorized Downs to purchase the stock and take out the certificate and thereby made him her agent, she being an undisclosed principal.

It will be observed that the stock was issued to H. D. Smithson and by him indorsed in blank to plaintiff on the day it was issued, she afterwards filling in her name. We have no doubt from the evidence that plaintiff bought the stock for herself and that she was the owner of it. It was issued in the name of Smithson and by him immediately indorsed over to the plaintiff. She then became the owner, notwithstanding it had not yet been transferred on the books of the company. And the latter had no right to assert a lien against the stock for Downs' debt, since he was neither the legal or equitable owner of it. He was not the legal owner as according to his own direction the company issued it to another party. He was not the equitable owner, for, in point of fact, he had no equity in it or equitable claim to it. When the stock was issued to Smithson he became the legal owner and plaintiff the equitable owner and when he, on the same day, indorsed it to her, she became the legal owner.

Conceding that the grain company had the power to charge stock with a lien for the indebtedness of the stockholder, yet that lien will not prevent such stockholder from transferring the stock free from the lien to any one who has no notice thereof, and in this case there is no evidence that plaintiff had notice of Downs' Indebtedness. Bank v. Durfee, 118 Mo. 431; Trust Co. v. Home Lumber Co., 118 Mo. 447.

But defendants suggest that Downs himself had notice, of course of his own indebtedness. And that he, being plaintiff's agent, charges her with his knowledge. He was her agent in the purchase of the stock, but his indebtedness did not arise until after that transaction. But conceding (for the present) that he was her agent throughout the time his indebtedness to the company was accruing, yet, according to defendants' own theory, he was acting for himself against plaintiff's interest. His knowledge in such circumstances will not be attributed to plaintiff. Mechem on Agency, sec. 723; Smith v. Farrell, 66 Mo. App. 8; Hickman v. Green, 123 Mo. 165; Bank v. Lovitt, 114 Mo. 519; Am. Surety Co. v. Pauly, 170 U. S. 133; Knobeloch v. Bank, 50 S. C. 259.

It is well enough to observe that in this case there is no question but that the money with which this stock was purchased was the money of this plaintiff and that the stock is hers. If the lien claimed by the grain company for Downs' indebtedness is allowed, it will be a practical confiscation of her property to that extent. The lien is a secret lien and in our judgment there are, in reality, no equitable consideration to be urged in favor of defendants. In denying that they knew the stock belonged to plaintiff, they admit that they issued it in the name of Smithson at Downs request to aid him in a business "trouble" he expected to have with another party. They took no security from Downs and allowed the stock to go into and remain in the name of Smithson where it might, at any moment, pass into the hands of an innocent party against whom they could have no pretense for charging to be the principal or business associate of Downs.

The judgment will be reversed and the cause remanded with directions to disallow a lien for the Downs' indebtedness and that upon the surrender of plaintiff's certificate indorsed to her by Smithson and payment of her indebtedness that

it be transferred on the books of the company to plaintiff and that a new certificate be issued to her in lieu thereof. *Smith, P. J.*, concurs; *Gill, J.*, absent.