IRENE W. JOHNSON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 91721. Promulgated April 6, 1939.

*Stanley S. Waite, Esq., Abraham Lowenhaupt, Esq., H. M. Stolar, Esq.,* and *Henry C. Lowenhaupt, Esq.,* for the petitioner.

*Frank B. Schlosser, Esq., Thomas R. Charshee, Esq.,* and *V. F. Weekley, Esq.,* for the respondent.

## OPINION.

OPPER: The actual issue is whether petitioner is entitled to deduct as "interest paid on indebtedness"[1] payments to her sisters as the result of an agreement pursuant to which she undertook "to pay the trust the sum of $2,625 per year as long as you live as interest upon said money." The "trust" referred to was an arrangement whereby the dividends on certain stock or the income from the proceeds thereof were to be paid to the respective sisters for their lives; and the "said money" was the proceeds of the redemption of such stock which petitioner used for the satisfaction of her own indebtedness, acknowledging that she and her legal representatives were indebted to herself as trustee "for money borrowed."

Both parties discuss the question from two points of view. The first is whether the "trusts" were such that in fact they were ineffectual to pass from the grantor sufficient interest and control over the income-producing property to permit her to escape taxation upon the income under the doctrine of *William C. Rands*, 34 B. T. A. 1107, and similar cases.[2] Although not expressed, this discussion inferentially proceeds, presumably, on the theory that, if petitioner is taxable on the income of the trusts, respondent must be sustained because any interest paid by her individually to herself, as trustee, must then be regarded as income to the trust which, if added to her other taxable income, would offset any deduction allowed for interest paid. The other contention is that the payments in question were not in any event interest upon indebtedness since there was no

---

[1] Sec. 23 (b), Revenue Act of 1934.
[2] See *Benjamin F. Wollman*, 31 B. T. A. 37; *Warren H. Corning*, 36 B. T. A. 301; *Estate of A. O. O'Laughlin*, 38 B. T. A. 1120.

principal obligation of petitioner to which they could attach. *Colston* v. *Burnet*, 59 Fed. (2d) 867; certiorari denied, 287 U. S. 640.

Rather than to treat these two contentions separately it seems to us preferable to regard them as the several aspects of a single question. In such a situation as this the issue "is not to be decided by attenuated subtleties. It turns on the import and reasonable construction of the taxing act." *Lucas* v. *Earl*, 281 U. S. 111, 114. "We are not concerned with the refinements of title", *Corliss* v. *Bowers*, 281 U. S. 376, 378, but rather with "the actual benefit for which the tax is paid", *ibid*. From this standpoint the "trusts" and the "indebtedness" can be looked at together. The reality or artificiality of the one will illuminate the true nature of the other.

We may begin by considering what appears to be the first step in these transactions, by which petitioner, having provided for the registration of certain stock in the names of her respective sisters, arranged contemporaneously and as an integral part of the transaction that the certificate would be endorsed in blank and redelivered into her hand. While there was no overt qualification of the registered interest of each sister, and as far presumably as the records of the corporation's transfer agent showed the title held was complete and unconditional, the fact is that petitioner's possession of the stock certificate endorsed in blank placed it within her power at any time to alter that apparent ownership and obliterate completely the sisters' superficial interest. *Butler* v. *Montgomery Grain Co.*, 85 Mo. App. 50. There was then no declaration of trust, no legal or equitable assignment of the certificate itself, no statement express or implied on the part of petitioner that she was purporting to transfer any interest whatever in the property represented by the stock certificate. So far as the record shows, the sole statement made by petitioner at the time—which in our view precludes any such conclusion—is that it was petitioner's "intention to give to you * * * the income from this stock." The intention to retain dominion and control over the property itself, as opposed to the future income to be derived therefrom, appears to us to be too clear to require further demonstration. See *Hoag* v. *Commissioner*, 101 Fed. (2d) 489.

It may be observed that the question before us does not revolve around the enforceability of such rights as may thereby have been conferred. Passing such questions as the nature of the transaction, whether it was a legal or an equitable assignment, whether there was consideration therefor, whether it was a promise or a mere statement of intention, or whether it operated *in praesenti* or merely *in futuro*, as to all of which there may be serious doubt, the true issue is whether the assignment of future income severed from its source can have the effect upon petitioner's tax liability for which she con-

tends. "If", as Mr. Justice Holmes suggests in *Corliss* v. *Bowers*, *supra*, "a man directed his bank to pay over income as received to a servant or friend, until further orders, no one would doubt that he could be taxed upon the amounts so paid." We are unable to perceive that the transaction before us was more than this. The effort to separate the fruits from the tree on which they grow must always be unavailing in the solution of problems of taxation. This is so whether the "tree" be the personal services of the assignor, *Lucas* v. *Earl*, *supra*, a combination of those services with invested capital, *Burnet* v. *Leininger*, 285 U. S. 136, or the capital alone, *J. V. Leydig*, 15 B. T. A. 124, 132; affd., 43 Fed. (2d) 494. The second ground for the decision in *William C. Rands*, *supra*, is precisely in point. It goes farther than is required on the present facts but clearly embraces them.

We there said (p. 1115):

As an alternative to the view that there were no trusts whatever, we think that at most the instruments established only an obligation upon Rands to hold the income in trust for these beneficiaries after it was derived by him from the securities, and that the securities themselves were at all times his own. Thus the legal effect was only as an assignment of future income, and as such did not operate to exclude it from his taxable income. It is only when the income-producing property is itself transferred that the income therefrom is no longer attributable to the transferor. *McCauley* v. *Commissioner*, 44 Fed. (2d) 919. Here it seems that at most Rands attempted to transfer the property itself to himself as trustee for himself and his estate as beneficiary, and the present ownership of the principal was still in him. Upon this view, if not upon the other, the petitioner has failed to establish that the income should, as a matter of law, be excluded from his return.

This posture of petitioner's liability to tax was in no respect altered by the execution of the so-called trust agreement three years later, by the conversion of the principal, first, in part, into other preferred stock and thereafter entirely into cash, or by the use of that cash by petitioner. The trust agreement purported to be no more according to the stipulation than a procedure whereby "the agreements were reduced to writing." The implication at least is that the certificate of stock is held by petitioner as an individual and in her own right. She "is hereby made and constituted a trustee" but the trust *res* is not there nor at any other place defined as being the stock certificate. If no more than a written record of the arrangement theretofore existing, it must be assumed as in the *Rands* case, *supra*, that the trust, at most, covered only the income. This would be confirmed by the provisions in the trust agreement that the petitioner in her own right was to obtain all stock dividends, all rights to subscribe, and particularly the right to have the stock voted as she should direct.

When the stock was converted into cash a different situation arose. By the terms of the "trust agreement" the proceeds were constituted a "trust fund", the trustee having full power and authority to invest and reinvest, and the income to be paid to the sister in each case during her natural life. Here we must look to what was done by the parties for the true construction of that provision. It was, of course, no present conveyance of any trust estate because at the time it was executed the securities were still in the form of preferred stock and there were no "proceeds" capable of being set apart. *Meek v. Republic National Bank & Trust Co.*, 9 Fed. Supp. 651, 655. When, two years later, the first installment of the preferred stock was converted into cash we find it credited by some mysterious process to the petitioner, as trustee, although the facts indicate that the stock redeemed had not been so carried upon the corporation's books and appeared on its face to be solely in the names of the respective sisters. Be that as it may, the ultimate result was a fund held by the corporation in the name of petitioner, as trustee. It does not, however, appear that it was ever so collected by her. For all that may be seen, it was paid by the corporation only after the petitioner had "conceived the idea of individually borrowing said $157,500 and paying 5% interest thereon." We are thus brought to the situation as it existed during the tax years when there was a purported obligation of some sort still remaining to be performed by petitioner.

For the scope and meaning, for our purposes, of that obligation we must look to the documentary evidence. This consists of a letter and an acknowledgment of an indebtedness in each case. Their purport is substantially identical. The letter says: "I shall borrow such money and will undertake to pay the trust the sum of $2,625 per year as long as you live as interest upon said money." Referring to the agreement the letter says further: "I propose to execute an agreement of which I am enclosing a copy under which I shall obligate myself and in the event of my death my personal representatives and my heirs to pay this $2,625 per year to the said trust as long as you live." The "agreement" acknowledges that the petitioner and her personal representatives are indebted to herself as trustee "in the sum of $52,500 for money borrowed," and continues:

I do hereby promise and agree for myself, my heirs, executors, administrators and assigns to pay to the said Irene W. Johnson, as trustee, and her successor in interest, the sum of $2,625 per year interest upon said borrowed money for and during the natural life of [the sister concerned].

The feature which strikes the reader at once is the absence of any promise to pay the principal. *Emil Weitzner*, 12 B. T. A. 724. Yet the existence of a principal debt, not merely an obligation to pay "interest", is a prerequisite of the deduction. *Edwin M. Klein*, 31

B. T. A. 910, 918, 919. In both the letter and the acknowledgment there is a significant failure to include any promise to repay principal, not to mention the complete absence of a time for payment. The agreement to pay interest stands alone with no accompanying promise to repay the amount "borrowed." That these omissions are not inadvertent, and that promises sometimes implied to repay a debt, and to do so upon demand, may not here be resorted to, appear from a consideration of the instruments as a whole and the purpose they were to serve. *Hegeman* v. *Moon*, 131 N. Y. 462; 30 N. E. 487. The stipulation to pay "interest" was for the entire life of the donee. It is clear there was no intention to confer upon her any concern whatever with the principal. A right in her or in the trustee for her account to collect the principal would not have served, but would have defeated, the petitioner's object. So long as petitioner continued to perform her agreement to pay the periodic amounts which are designated as interest, which for present purposes we shall assume to have been enforceable, the purpose to provide an income to petitioner's sisters would best be accomplished in that way. And, on the other hand, petitioner could not on her part, even if she wished, repay the principal and thereby relieve herself of her obligation to make the periodic payments of income. For the agreement is to pay the sum mentioned annually during the entire life of each sister. It follows that the payments, despite their designation, see *Kidd* v. *Puritana Cereal Food Co.*, 145 Mo. App. 502; 122 S. W. 784, 788, were not in reality "interest" but were fixed sums agreed to be paid throughout a given life and in any event; and that beyond this there was no "indebtedness" upon which it can be said that the interest was being paid so as to bring into operation the provisions granting the deduction claimed. There was no debt because there was no promise to pay the principal amount; because, at the only time when payment of the principal could conceivably have been made by petitioner or demanded on behalf of the donee, the sole right to the principal rested in petitioner and her legal representatives; and because the accepted definition of a debt as being payable presently or at some future time [3] is inapplicable since that time, the death of the donee, is precisely the time when nothing would be due.

From the standpoint of both of the considerations applicable to the decision of this proceeding we regard the case of *Gilman* v. *Commissioner*, 53 Fed. (2d) 47, as conclusive. Although slightly different, the facts there are in most respects more favorable to the

---

[3] "In order to create an indebtedness there must be an actual liability at the time, either to pay then, or at some future time." Bouvier Law Dictionary, vol. II, p. 1531. See also *Kidd* v. *Puritana Cereal Food Co., supra*.

712

taxpayer. There, as here, there was an assignment of what purported to be certain interests connected with income-producing personal property; but there these assignments were not limited to the income, they appeared on their face to be complete. In consideration of the relinquishment of this property the taxpayer purported to execute promissory notes; but there the notes on their face were concededly payable to the holders in a certain contingency. Here the principal of the debt could never be paid. There the promisees were also members of the taxpayer's family, although somewhat closer in degree of relationship. The court found "that petitioner used the above means in providing what he conceived to be the proper allowance for the members of his family." We see no basis upon which a different result could be arrived at on the present facts. We can not do better than to phrase our conclusion in the words of the court in that case: "To permit petitioner to put his obligation in this form, classifying it as indebtedness and treat the funds furnished his family, as interest, would be to grant him deductions not authorized by the statute."

Reviewed by the Board.

*Decision will be entered for the respondent.*

Van Fossan concurs only in the result.

Arundell, Leech, and Tyson dissent.