**JOHNSON v. COMMISSIONER OF INTERNAL REVENUE.**

No. 11558.

Circuit Court of Appeals, Eighth Circuit.

Dec. 18, 1939.

Rehearing Denied Jan. 10, 1940.

Stanley S. Waite, of St. Louis, Mo. (Lowenhaupt, Waite & Stolar, of St. Louis, Mo., on the brief), for petitioner.

Edward H. Hammond, Sp. Asst. to Atty Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Sp. Asst. to Atty. Gen., on the brief), for respondent.

Before STONE, SANBORN, and THOMAS, Circuit Judges.

THOMAS, Circuit Judge.

This appeal is from a decision of the Board of Tax Appeals (39 B.T.A. 702) sustaining the Commissioner in determining a deficiency of $4,840.19 in the petitioner's income tax liability for the years 1934 and 1935. The question presented is whether in computing her net income for these years the taxpayer was entitled to deduct as interest paid on indebtedness certain payments made by her to each of her three sisters. The Commissioner denied the deductions as not within the meaning of section 23 of the Revenue Act of 1934, c. 277, 48 Stat. 680, 26 U.S.C.A. § 23(b), which provides:

"In computing net income there shall be allowed as deductions: * * *

"(b) *Interest*. All interest paid or accrued within the taxable year on indebtedness, * * *."

The facts were stipulated. On April 14, 1928, the taxpayer caused to be transferred into the name of and delivered to each of her three sisters 500 shares of the preferred stock of the International Shoe Company. On April 16, 1928, the certificates were sent to each of the three sisters with identical letters requesting each sister to endorse the certificate and return it for delivery to the taxpayer. There were also enclosed with each certificate identical letters, except as to name and address, to be signed and returned with the certificates. Each sister immediately endorsed the certificate in blank, signed the enclosed letter dated April 16, 1928, and returned them. The return letters were addressed to the taxpayer, each of which recited: "It is my understanding that you placed these shares in my name in order that I might receive the dividends therefrom during my natural life; that at my death my interest in and to the shares and the dividends therefrom ceases, and that the shares shall be retransferred to you, if living, and if not living then to your estate, if still in administration, otherwise to your heirs at law."

On March 31, 1931, separate agreements in writing containing identical provisions were made between the taxpayer and each of the sisters. These agreements provided that the taxpayer was made trustee to keep the certificates of stock during the natural life of each sister; that the sister should receive the dividends declared upon the stock during her natural life; and that the reversion or remainder interest after the death of each sister "is hereby vested" in the taxpayer with the right to cause the certificate to be transferred to her upon the books of the company. In case of taxpayer's death before that of a sister it was provided that the reversion should vest upon the death of such sister in the taxpayer's legatees, if she left a will, and if not then in her heirs. Power was given the trustee to name her own successor. Paragraph number 4 provided that in case the stock should be redeemed the trustee should "hold the proceeds as a trust fund" with power to invest the same and pay over the net income to the sisters during their natural lives.

Subsection (c) of section 4 provided that upon the death of a sister the trust for her benefit should terminate and the trust estate should be conveyed to the taxpayer, if living, otherwise to her legatees or heirs at law.

All of the shares were subsequently redeemed by the International Shoe Company at $105 a share and the proceeds credited on the books of the Company to the account of "Irene Johnson, Trustee." On December 1, 1933, the credit balance in this account was in the sum of $157,500, of which amount $52,500 belonged to each of the three trust estates.

On December 29, 1933, the taxpayer wrote to each of the three sisters, saying:

"I am indebted to the bank for borrowed money and I desire to borrow said money from the trust in order to pay my indebtedness to the bank. If you are agreeable, I, as trustee under said Indenture of Trust, will invest said proceeds from the redemption of said trust as follows: I shall borrow such money and will undertake to pay the trust the sum of $2,625.00 per year as long as you live as interest upon said money.

"I propose to execute an agreement, of which I am enclosing a copy, under which I shall obligate myself, and in the event of my death, my personal representatives and my heirs, to pay this $2,625.00 per year to the said trust as long as you live."

In January, 1934, each of the sisters approved the agreement referred to in the letter of December 29, 1933. That agreement is as follows:

"I, Irene W. Johnson, do hereby acknowledge that I, my heirs, executors, administrators and assigns, are indebted to Mrs. Irene W. Johnson, Trustee, and her successor in trust, under an indenture of trust dated the 31st day of March, 1931, by and between Mrs. Irene W. Johnson, of the City of St. Louis, Missouri, as party of the first part, and (sister concerned), now residing in Shanghai, China, as party of the second part, in the sum of $52,500 for money borrowed.

"I do hereby promise and agree for myself, my heirs, executors, administrators and assigns, to pay to the said Irene W. Johnson, as trustee, and her successor in trust, the sum of $2,625.00 per year interest upon said borrowed money for and during the natural life of said (sister).

"Upon the death of said (sister), this obligation shall be distributed by the said trustee, or her successor in said trust, to the persons entitled to receive the same in accordance with paragraph lettered (c) of subdivision 4 of said indenture of trust.

"Witness my hand and seal this 29th day of December, 1933.

"Irene W. Johnson."

Subsequent to December, 1933, the taxpayer used all of the $157,500 to reduce her indebtedness at the bank, and thereafter during the calendar years 1934 and 1935 paid to each of her sisters the sum of $2,625 per year.

The Board of Tax Appeals held that the payments for the taxable years 1934 and 1935 were not deductible for the reason that, despite their designation, such payments "were not in reality 'interest' but were fixed sums agreed to be paid throughout a given life and in any event; and that beyond this there was no 'indebtedness' upon which it can be said that the interest was being paid * * *." 39 B.T.A. page 711.

To satisfy the requirements of the statute and to entitle the taxpayer to the claimed deductions under the circumstances there (1) must have existed during the taxable years three valid existing trusts; (2) the taxpayer must have been indebted to each of these trusts in the amount of $52,500; and (3) there must have been a binding legal obligation on her part to pay such debts with 5 percent interest annually thereon.

Assuming without deciding that the arrangements between the taxpayer and her sisters in 1928 and the contract of March 31, 1931, created three valid trusts, the new arrangements in December, 1933, were a substitute for those trusts, and our inquiry is limited to the character and legal effect of the new arrangements. This is true because the res of the trusts, $157,500, was with the consent of the beneficiaries used by the trustee and the only res remaining were the agreements dated December 29, 1933.

Since the three agreements are of the same tenor and effect, an examination of one of them will be sufficient. It will be observed that these agreements consist of three paragraphs. In the first paragraph the taxpayer acknowledges that she is indebted to herself as trustee "in the sum of $52,500 for money borrowed." In the second she promises and agrees to pay to herself as trustee "the sum of $2,625 per year interest upon said borrowed money for and during the natural life of said (sister)"; and in the third paragraph it is provided that "Upon the death of said (sister), this obligation shall be distributed by the said trustee, or her successor in said trust, to the persons entitled to receive the same in accordance with paragraph lettered (c) of subdivision 4 of said indenture of trust," that is, the contract of March 31, 1931.

By this arrangement the res of the trusts completely disappeared and nothing remained except the personal obligation of the taxpayer to make certain specified annual payments. The agreement contains no promise binding the taxpayer to restore the trust res at some future date and her acknowledgment that she is indebted to herself as trustee in that amount does not constitute a debt. This is true for the following reasons.

First. "The term 'indebtedness' as used in the Revenue Act implies an unconditional obligation to pay." Gilman v. Commissioner, 8 Cir., 53 F.2d 47, 50, 80 A.L.R. 209. Assuming that ordinarily an acknowledgment of indebtedness implies an obligation payable on demand, this instrument does not fall within that category. The trustee alone can make demand; and her failure or refusal to make demand upon herself can not constitute a breach of any trust because the sisters have consented to the arrangement. So long as the taxpayer continues to make the annual payments specified by the agreement the sisters will have no valid basis for complaint. Should the taxpayer at any time default in any of these payments the agreement in no sense implies a condition that she shall thereupon become liable to restore the res of the trust. But if a condition of this kind can be implied it is evident that such a debt is not an "unconditional obligation to pay." Furthermore, if the annual payments are continued during the life of the sisters, no obligation to restore the trust res can ever possibly arise under any theory. Upon their death the taxpayer's duty to continue these payments will terminate and the reversion, if one can be said to exist, will become merged in the taxpayer's estate.

Second. The conclusion is inescapable that the agreement was intended to substitute the personal obligation of the taxpayer to make annual payments in return for the consent of her sisters that the trust be terminated and its res be returned to the taxpayer's personal estate. This must follow because of the settled rule that an "obligor has no such interest in his own obligation as can be held in trust * * * a person cannot have a legal claim against himself, whether for his own benefit or for the benefit of another." 1 Scott on Trusts, Sec. 87, p. 473. Admitting the existence and validity of this rule, counsel for the taxpayer say that nevertheless the fiduciary relation continued to exist and that the petitioner continued to be personally liable in equity to her sisters. But her liability, if any, is confined to the duty to make the specified annual payments. Certainly she can not be held liable to pay her sister the $52,500 which she used with the sister's consent. Nor can she be held liable to a non-existent trust. This is made apparent further by the provision in the third paragraph of the agreement that upon the death of the sister "this *obligation* shall be distributed" to the trustee or to her legatees or heirs. What will remain to distribute at that time? The $157,500 is already absorbed in the taxpayer's estate and the "obligation" will neither add to nor subtract from that estate.

It follows that the deductions were properly disallowed, and that the order under review should be, and it is, affirmed.