Empire Trust Company, Margaret Prescott Tracy and William Ward Tracy, as Executors of the Last Will and Testament of William Dwight Tracy, Deceased, and Margaret Prescott Tracy, Individually, Petitioners, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 90519.    Promulgated April 16, 1940.

*Stuart McNamara, Esq., Ulysses S. Grant, Esq.,* and *John F. Porter, Esq.,* for the petitioners.

*C. C. Holmes, Esq.,* for the respondent.

OPINION.

HILL: The principal facts are not in dispute. The parties differ only as to the legal implications and conclusions to be drawn from them. The petitioners concede that the transfer of the securities from

the trust to Mrs. Tracy and their sale to Connors were prompted by the sole desire to create and make available a deductible loss to reduce income tax liability on their joint income tax return for the taxable year. They insist, however, that all steps necessary to a bona fide absolute gift of the trust securities to Mrs. Tracy were legally taken and completed, and therefore the motive and purpose are not material here. On the question of "motive", as affecting this issue, petitioners cite *Commissioner* v. *Eldridge*, 79 Fed. (2d) 629, and *Commissioner* v. *Hale*, 67 Fed. (2d) 561, as authorities for the doctrine that "a taxpayer may resort to any legal method available to him to diminish the amount of his tax liability." The respondent does not dispute petitioners' construction of the law, but argues that it has no application here, because these transactions were mere shams, in that they "served no other purpose than to reduce income taxes." Respondent cites *United States* v. *Phellis*, 257 U. S. 156; *Gregory* v. *Helvering*, 293 U. S. 465; *Electrical Securities Corporation* v. *Commissioner*, 92 Fed. (2d) 593; *Hendee* v. *Commissioner*, 98 Fed. (2d) 934; *Handbird Holding Corporation*, 32 B. T. A. 238; *Royal Marcher*, 32 B. T. A. 76, as supporting this objection. These decisions deal with statutory reorganizations which, for recognition, depend upon technical requirements not present here. Respondent's objection may not be sustained merely on the ground that the sole purpose of the transactions was to reduce tax liability. *Bingham* v. *White*, 31 Fed. (2d) 574. We are also of the opinion that there was a sale of the securities to Connors. The evidence convinces us that all elements necessary to pass title to him were present. This evidence is not disputed and must be accorded full credit. Under the showing the respondent's objection that the consideration was nominal only is without point, and the sale must be recognized. *Alcoma Corporation*, 28 B. T. A. 1292. The respondent, however, urges another objection which we think is well taken and fatal to petitioner's claim. Independent of the question of whether there was a sale of the trust securities, respondent contends that there was no gift thereof to Mrs. Tracy for the reason that there was no intent on the part of either the trustee or Mrs. Tracy that she should take and hold the securities as her property, but that the sole intent of both was merely that title thereto should pass through her to a vendee pursuant to an agreement for such transfer and sale as constituent steps of one integral plan. Respondent further contends that if there was a gift at all to Mrs. Tracy it was a gift of the proceeds of the sale and not of the securities. The evidence sustains the facts upon which such contentions are based and we think the contentions sound. In support of his contention respondent cites *Weil* v. *Commissioner*, 82 Fed. (2d) 561. In that case Weil, on October 1, 1930, claimed he made a gift of corporation stock to his four minor children. He

did not cause the stock to be transferred on the corporation's books and executed no writing purporting to convey the securities. He took them from among his certificates of stock which he held in a safety deposit box and placed two certificates of 100 shares each in each of four envelopes bearing severally the names of his minor children in which he kept other securities belonging to them and put the envelopes back into the box. He preserved a memorandum of the certificate numbers and made entries of them on a loose-leaf memorandum book which showed the various securities owned by his children. According to a preconceived plan Weil, on October 9, 1930, caused the stock in question to be sold through a broker in the name of his children and an aliquot share of the proceeds to be credited to each of them. The court held that there was a gift of the proceeds of sale but not of the stock sold. In the *Weil* case, as in the instant case, the taxpayer admitted that his decision to sell the shares was arrived at before he decided to make the gifts, and that his decision to make the latter before selling was motivated by his desire to "divide the income tax" which he thought permissible. The court said in part:

We think the controlling fact is that Weil proposed at all times to sell the stock and kept control of it to do so. * * * This retention of control for the purpose of exercising dominion over them by sale is inconsistent with a present absolute gift, the legal result of which would have been to prevent a sale.

In the instant case the trustee did not relinquish control of the securities until they were sold and Mrs. Tracy did not gain control of them at any time.

In point on the same issue is the Board's decision in *F. Coit Johnson*, 33 B. T. A. 1003; affirmed in *Johnson* v. *Commissioner*, 86 Fed. (2d) 710. The question in that case related to the legal effect of a gift of a $400,000 bank check made by a taxpayer to his wife pursuant to a plan whereby and through which the funds represented were made the corpus of a trust and immediately loaned to the husband upon his unsecured interest-bearing note. Like the plan at bar, the scheme was carefully worked out in advance by lawyers, and intended, among other purposes, to reduce the taxpayer's income tax burdens by creating an interest-bearing debt. That taxpayer paid interest to the trust on his said note and claimed a deduction from income for the same as "interest paid upon an indebtedness." This Board sustained the respondent's disallowance of the taxpayer's claim upon the ground that there was no bona fide gift made, in first instance, from the latter to his wife of the trust corpus, and therefore, no debt created by the pretended loan. The Circuit Court of Appeals, in sustaining our decision, among other things, said:

Counsel for the petitioner asserts that the transactions above described resulted in the following legal relations: Mr. Johnson made an absolute and unconditional gift of $400,000 to his wife; with her own property she set up a trust having a

capital of $400,000; the trustee loaned this sum to Mr. Johnson upon his demand note bearing interest, and he paid such interest to the trustee in. 1931. If such were indeed the legal relations of the parties, it would follow as of course that the taxpayer should be allowed the claimed deduction, for it is too well settled to require discussion that legal transactions cannot be upset merely because the parties have entered into them for the purpose of minimizing or avoiding taxes which might otherwise accrue. * * * Despite such purpose, the question is always whether the transaction under scrutiny is in reality what it appears to be in form. * * *

But there is a fallacy in the petitioner's contention, and it lies in the premise that he made an absolute and unconditional gift of $400,000 to his wife, and that her money set up the funded trust. There was an agreement between them that the money he made available to her was to be used in only one way; she was to pass it to the trustee upon terms which bound the trustee to return it to him upon request. Everything was done at the same time and as part of one transaction. Not for an instant did Mr. Johnson lose control of his "gift", nor did Mrs. Johnson or the trustee have possession of it free from a duty to return it to him. * * *

We think the principle underlying that decision is applicable to the situation here. In this case the trust securities were purportedly transferred to Mrs. Tracy but such transfer was in compliance with, and in pursuance of, an agreement between her and her husband as trustee that such securities be immediately sold to establish a deductible loss on the joint income tax return of the Tracys. It is obvious that the transfer of the securities to Mrs. Tracy was more symbolical than actual and that there was no purpose to transfer them to her apart from the agreed plan to sell them. On this phase of the transactions, the record shows that all steps, including (a) assignment of the securities to Mrs. Tracy by the trustee; (b) the trustee's instructions to the bank to transfer the securities to her account; (c) the direction to the bank to deliver them to the brokers for sale; and (d) the orders to the brokers to sell, were incorporated in a single set of papers, all of which were simultaneously transmitted to the bank over the joint signatures of the Tracys. These several steps, all being part of the single plan worked out by the lawyers and carried out pursuant to instructions, constitute the transfer and sale each a part of a single transaction the purpose of which was not to vest property rights in, and dominion over, the securities in Mrs. Tracy, but to sell the securities to create a loss available as a deduction for tax purposes for the joint benefit of the Tracys. The petitioners argue that after the supposed gift Mrs. Tracy had complete control over the securities and could, at her election, have revoked the order of sale and retained or otherwise disposed of them for her sole use; and that, therefore, a completed gift *inter vivos* must be recognized. The answer to that argument is that, under the agreed plan adopted and consummated for the sole purpose of effecting a sale of the securities to create a deductible tax loss as

above indicated, none of the rights or powers so claimed for Mrs. Tracy were vested, or were intended to be vested, in her by the transfer in question.

On the basis of the facts of the transaction between the trustee and Mrs. Tracy, we hold that there was no gift to Mrs. Tracy of the trust securities in question. We arrive at this conclusion independent of the consideration of the power of the trustee to make a gift of trust securities to Mrs. Tracy for the conceded purpose. We are of the opinion, however, that the trustee did not have the power to make a gift of trust securities to Mrs. Tracy other than for her exclusive use and benefit. The trust instrument gave the trustee power to transfer to Mrs. Tracy a part of the trust principal "absolutely and in fee for her *exclusive use and benefit.*" The alleged gift of trust securities herein attempted to be made was not for the exclusive use and benefit of Mrs. Tracy but was for the joint benefit of herself and the petitioner, who was both her husband and the trustee of the trust. In our opinion, the transfer here in question, for the purpose for which the record shows it was made, was not authorized by the trust instrument and was therefore ineffective to pass title. For this additional reason we hold there was no gift of the trust securities in question to Mrs. Tracy.

The respondent concedes that Mrs. Tracy sustained a deductible loss on the sale of Utilities Service Co. bonds which she purchased at the price of $5,250, April 12, 1929, and upon which she subsequently paid $20 as expenses of a bondholders' committee. Upon the record, we find the sum of $5,270 to be the measure of Mrs. Tracy's loss in the transaction, and hold said amount to be deductible on the joint return as a capital loss.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

ARUNDELL, MURDOCK, BLACK, AND DISNEY dissent.