**WOODWARD v. UNITED STATES.**
Civ. No. 541.

United States District Court
N. D. Iowa, E. D.
June 26, 1952.

Tyrrell M. Ingersoll (of Elliott, Shuttle-worth & Ingersoll), Cedar Rapids, Iowa, Robert W. Clewell (of Clewell, Cooney & Fuerste), Dubuque, Iowa, for plaintiff.

T. E. Diamond, U.S. Dist. Atty., Sheldon, Iowa, Wm. B. Danforth, Asst. U. S. Dist. Atty., Sioux City, Iowa, Graham Loving, Jr., Sp. Asst. to Atty. Gen., for defendant.

GRAVEN, District Judge.

This is an action for the recovery of federal income taxes and interest claimed to have been erroneously and illegally assessed and collected. Jurisdiction is based upon 28 U.S.C.A. § 1346(a) (1). The plaintiff is a citizen of the United States and a resident of Dubuque, Dubuque County, Iowa. The amount in controversy herein does not exceed the sum of $10,000. The plaintiff is, and at all times material hereto has been, the publisher of a daily newspaper, which newspaper is a corporation in which the plaintiff owns a controlling interest.

In August, 1937, the plaintiff was the owner of five life insurance policies. Three of the insurance policies were with the Equitable Life Assurance Society of the United States. Two of the Equitable policies, in face amounts of $10,000 and $15,-000 respectively, had been issued in 1926.

The third Equitable policy, in the face amount of $10,000, had been issued in 1928. The Equitable policies were of the so-called "life-convertible" type. The other two policies were with the Mutual Benefit Life Insurance Company, in the face amounts of $15,000 and $75,000 respectively. They were taken out by the plaintiff on August 2, 1937, and were of the ordinary life type. The plaintiff's executors or administrators were the named beneficiaries in each of the five insurance policies. In each policy the plaintiff had reserved the right to change the beneficiary thereof. On August 18, 1937, the plaintiff executed instruments with respect to the two Mutual Benefit policies which have been referred to by the parties as "assignments." The two instruments were identical except for the policy numbers appearing thereon, and were as follows:

"August 18, 1937

"The Mutual Benefit Life Insurance Company is hereby requested to change the Beneficiary under Policy No.—— on my life, by making the policy payable to Elsie M. Woodward, my wife, her executors, administrators or assigns, and to make the proceeds payable at maturity in one sum.

"I hereby relinquish the right to exercise any rights or options heretofore retained.

"I desire that Elsie M. Woodward shall have the right during her lifetime to exercise the following rights and options, without the consent of any other person. If (e), (f), (g) and (h), or any of them, be so exercised, she is to receive all benefits arising therefrom.

"(a) Change of Beneficiary
(b) Loans to pay premiums
"(c) Reinstatement
(d) Settlement Options
"(e) Surrender Options
(f) Cash Loans
"(g) Dividend Rights prior to Maturity of Policy
(h) Receipt of proceeds as Endowment.

"I desire that Elsie M. Woodward shall have the above right to change the Beneficiary at any time and from time to time while the Policy or any extended insurance shall be in force and not assigned, upon return of the

Policy to the Company at its office in Newark, New Jersey, with her written request for the appropriate indorsement of the Policy by the Company.

"Witness /s/ Irving H. Welch
          /s/ Fred W. Woodward

"I hereby accept the above and reserve the rights and options as above provided.

"Witness /s/ Irving H. Welch
          /s/ Elsie M. Woodward"

The two Mutual Benefit policies had no cash surrender value at the time these instruments were executed. On September 14, 1937, Elsie M. Woodward executed requests with respect to the two Mutual Benefit policies that the beneficiary under such policies be herself, if living at the time of the insured's death, otherwise her son F. Robert Woodward, if living at the time of the insured's death, otherwise M. Jeanne Woodward (F. Robert Woodward's wife), if living at the time of the insured's death, otherwise Elsie M. Woodward's executors, administrators, or assigns.

On September 13, 1937, the plaintiff executed instruments with respect to each of his three Equitable policies which have been referred to by the parties as "assignments," and which were as follows:

"Request for Change of Policy

"To the Equitable Life Assurance Society of the United States

"Application is hereby made to make the following change in Policy Nos. ——— by endorsement on said policies: "changing beneficiary to the Insured's executors or administrators thereafter cancelling said policies and issuing in place thereof policies on the Corporate and Absolute Owner form with all rights vested in Elsie M. Woodward, wife of Fred W. Woodward, her executors or administrators.

"Special Beneficiary: the Special Beneficiaries as named in the Special Provision attached hereto bearing date of this request and in accordance therewith.

\*     \*     \*     \*     \*     \*

"Dated at Dubuque Sept. 13, 1937
          "/s/ Fred W. Woodward
               "Insured."

Attached to each of these instruments was a special provision providing that the beneficiaries should be Elsie M. Woodward, if living at the time of the insured's death, otherwise F. Robert Woodward, if living, otherwise M. Jeanne Woodward, if living, otherwise the children of F. Robert and M. Jeanne Woodward, if living, otherwise the executors or administrators of Elsie M. Woodward. The special provision was in each case dated September 13, 1937, and signed by the plaintiff.

The plaintiff filed a federal gift tax return for the year 1937 listing the assignment of the Equitable policies as a gift to Elsie M. Woodward in the total amount of $13,474.50. The Mutual Benefit policies were listed as a gift to Elsie M. Woodward of no value.

Subsequent to the assignment of the five policies, the plaintiff continued to pay the premiums on the policies. It does not appear who had possession of them subsequent to the assignments.

In the fall of 1939 the plaintiff decided to set up a trust of which his wife would be an income beneficiary. He testified that he believed that setting up a trust would make for benefit and protection to his wife. The plaintiff discussed with his wife the setting up of the trust. The plaintiff wished the trust corpus to include, in addition to certain shares of corporate stock, the five life insurance policies heretofore referred to.

On December 28, 1939, the plaintiff executed a promissory note payable on demand to Elsie M. Woodward in the amount of $5,098. On January 31, 1940, the plaintiff executed a promissory note payable on demand to Elsie M. Woodward in the amount of $16,748.52. On February 16, 1940, the plaintiff executed a promissory note payable on demand to Elsie M. Woodward in the amount of $2,159.69. The notes indicated that they were to bear interest at the rate of 4 per cent per annum. No collateral was given by the plaintiff to Elsie M. Woodward to secure the payment of any of the notes. The plaintiff testified that he recalled handing the notes to Elsie M. Woodward. It appears that the three notes referred to were in a total amount corre-

sponding to the then total cash surrender value and dividend accumulations of the five life insurance policies heretofore referred to. The note which was in the amount of $16,748.52 was cancelled in 1944 and six smaller notes in the same total amount were substituted therefor. On December 28, 1939, the plaintiff and Elsie M. Woodward wrote the following letter to the Mutual Benefit Life Insurance Company in relation to the two Mutual Benefit policies heretofore referred to:

"Gentlemen: Re Policies Nos. ——

"The undersigned owner, Elsie M. Woodward, and the undersigned insured, Fred W. Woodward, join in requesting that all present beneficiary provisions now in effect with respect to the above policies be and are hereby cancelled and in lieu thereof, there shall be provided that the estate of the insured shall be the death beneficiary.

"Attached hereto you will also please find an assignment, reassigning all right, title and interest in and to the above numbered policies to the insured, Elsie M. Woodward the present owner thereunder relinquishing every right that she may have in said policies.

"Yours very truly,

"/s/ Elsie M. Woodward
"Elsie M. Woodward, Owner
"/s/ Fred W. Woodward
"Fred W. Woodward, Insured."

The assignment referred to in such letter read as follows:

"This Assignment and Agreement executed this 28th day of December, 1939 by and between Elsie M. Woodward as assignor, and Fred W. Woodward as assignee, Witnesseth:

"For $5,098.00 the receipt whereof by the assignor is hereby acknowledged, the assignor hereby assigns, sells, transfers and conveys to Fred W. Woodward, assignee, the following life insurance policies issued by the Mutual Benefit Life Insurance Company upon the life of said Fred W. Woodward, namely, Policy No. 1775151 in face amount of $75,000, and Policy No. 1775152 in face amount of $15,000, including all rights, title and interest of

any and every kind which the assignor has or may have in or to said policies and in or to the proceeds thereof.

"In witness whereof the parties hereto affix their signatures.
"/s/ Elsie M. Woodward
"Owner
"/s/ Loretta Knopf
"(Witness)
"/s/ Fred W. Woodward
"Insured"

On January 30, 1940, Elsie M. Woodward executed the following assignment with respect to each of the Equitable policies heretofore referred to:

"For One Dollar, to me in hand paid, and for other valuable considerations (the receipt of which is hereby acknowledged) I hereby assign, transfer and set over Policy No. —— on the life of F. W. Woodward, my husband issued by the Equitable Life Assurance Society of the United States with all rights therein, and with all money now or hereafter due or payable thereon, and all dividends, options, benefits or advantages derived therefrom, including the right to surrender said policy at any time and to receive and receipt for the surrender value thereof to

"F. W. Woodward, the insured, whose P. O. address is The Telegraph Herald, Dubuque, Iowa and for the consideration above expressed I do also for my executors and administrators, guarantee the validity and sufficiency of this assignment to the assignee named herein his executors, administrators and assigns; and their title to the said policy will forever warrant and defend.

"In Witness Whereof, I have hereunto set my hand and seal, this 30th day of January 1940.

"/s/ Elsie M. Woodward"

On December 26, 1939, a trust instrument was executed by the plaintiff, as "Trustor," and by the plaintiff, Elsie M. Woodward, and their son F. Robert Woodward, as "Trustees." The trust was to provide a certain fixed annuity for Elsie M. Woodward for life, with the trustees having dis-

cretion to pay her further sums, either from principal or income. Upon her death the trustees were to make payments to F. Robert Woodward and others as beneficiaries, and F. Robert Woodward was given a power of appointment to name those among whom the corpus of the trust was to be divided upon the termination of the trust. Certain corporate stock owned by the plaintiff was put in the corpus of the trust at that time, and the five life insurance policies heretofore referred to were also listed as part of the corpus of the trust. Originally the schedule of insurance policies attached to the trust instrument indicated that the insurance policies were placed in the corpus of the trust on December 26, 1939. Subsequently those dates were crossed out and the date January 23, 1940, was inserted with respect to the Mutual Benefit policies, and the date February 19, 1940, was inserted with respect to the Equitable policies. The trust instrument contained detailed provisions with respect to the powers and duties of the trustees with respect to any insurance policies which might be placed in the corpus of the trust.

On January 23, 1940, the plaintiff executed the following assignment with respect to the two Mutual Benefit policies:

"Assignment of Policy
No. ——— (face amount)
Issued by
The Mutual Benefit Life Insurance Company of Newark, N. J.
Life of Fred W. Woodward

"For value received, I do hereby assign, transfer and set over unto Fred W. Woodward, Elsie M. Woodward, and F. Robert Woodward, whose Post Office addresses are Dubuque, Iowa, the above designated policy of insurance, and all sum or sums of money, interest, benefit and advantage whatsoever, now due or hereafter to arise, or to be had or made by virtue thereof; to have and to hold unto the said assignees, Fred W. Woodward, Elsie M. Woodward, and F. Robert Woodward, as Trustees under the Fred W. Woodward Trust No. 1, dated December 26, 1939, * * *.

"In Witness Whereof, I have hereunto set my hand the 23rd day of January, one thousand nine hundred and forty at Dubuque, County of Dubuque, State of Iowa.

"Signed in the
Presence of
"/s/ Ethel M. Dicken
"Witness
"/s/ Fred W. Woodward
"Insured."

On January 31, 1940, the plaintiff sent in requests with respect to each of the Equitable policies that the beneficiary of each of them should be changed to "The Insured's executors or administrators." On February 19, 1940, the plaintiff executed the following assignment with respect to each of the Equitable policies:

"Assignment

"As a Gift, without any Consideration in Money or Money's Worth, I Fred W. Woodward, of Dubuque, Iowa, the insured, hereby Assign, Transfer and Set Over unto Fred W. Woodward, Elsie M. Woodward, and F. Robert Woodward, of Dubuque, Iowa, Trustees under a certain Trust Agreement, dated the 26th day of December, 1939, their successors or successor, as the case may be (in which said Trust Agreement Fred W. Woodward is named the Trustor), Policy No. ——— issued by Equitable Life Assurance Society of the U. S., and all incidents of ownership in said policy which I, the said insured, possess; this assignment in trust, however, for the purposes expressed and under the limitations and conditions embodied in said Trust Agreement. It is understood and agreed that in any settlement of said policy there shall first be deducted all then existing indebtedness to said Equitable Life Assurance Society thereon.

"Dated at Dubuque, Iowa, on this 19 day of Feb. A.D., 1940.
"/s/ Fred W. Woodward
"Insured."

It does not appear whether the plaintiff reported the assignments to the trust as gifts for federal gift tax purposes.

On or about February 18, 1941, Elsie M. Woodward made a loan in cash to the plaintiff in the amount of $1,000, for which loan he gave her his 4 per cent demand note in the amount of $1,000.

No payment has ever been made by the plaintiff on the principal of any of the notes heretofore referred to. No interest payments on such notes were made by the plaintiff during the years 1941, 1942, and 1943. In the year 1944 the plaintiff paid the sum of $4,298.98 to Elsie M. Woodward as interest on all of the above-mentioned notes for the years 1941 through 1944 inclusive. In the year 1945 the plaintiff paid the sum of $401.22 to Elsie M. Woodward as interest on all of the notes for the year 1945. In the year 1946 the plaintiff paid the sum of $400.25 to Elsie M. Woodward as interest on all of the notes for the year 1946. These interest payments included interest paid on the above-mentioned $1,000 note in the amount of $154.69 in 1944, $40 in 1945, and $40 in 1946.

During the years 1944, 1945, and 1946 Elsie M. Woodward realized income from the sale of corporate stocks, from dividends on stocks, from the aforementioned trust and from another trust set up by the plaintiff of which she was a beneficiary, from the aforementioned interest payments on the notes, and from other sources. It appears that the plaintiff, his office secretary, Miss Thorsella Pins, and his son, F. Robert Woodward, handle and did handle during those years most of the banking and other financial transactions in which Elsie M. Woodward is and was engaged.

In each of the years 1944, 1945, and 1946 the plaintiff filed his individual federal income tax returns at the office of the Collector of Internal Revenue for the District of Iowa, Des Moines, Iowa, on a calendar year basis and on a cash basis. In his federal income tax returns for each of the years 1944, 1945, and 1946, the taxpayer claimed as deductions from his income the interest payments made to Elsie M. Woodward on the notes heretofore referred to. For the year 1944 the Commissioner of Internal Revenue allowed the deduction of $154.69 claimed for interest paid on the $1,000 note. With that one exception, the Commissioner

disallowed such interest payments as deductions and assessed deficiencies accordingly against the plaintiff on his federal income taxes for those years, with interest thereon.

In the year 1930 the plaintiff purchased 20 shares of stock in the Missouri State Life Insurance Company at a total cost of $690. On December 7, 1945, the plaintiff sold such shares of stock for the sum of $289.90. The loss to the plaintiff on such sale was the sum of $400.10. In his individual federal income tax return for the year 1945 the plaintiff claimed half of such loss, to wit, $200.05, as a deduction from his income as a long term capital loss. Such claimed deduction was disallowed by the Commissioner of Internal Revenue, and a deficiency was assessed accordingly against the plaintiff in his federal income tax for that year, with interest thereon.

The plaintiff paid the deficiencies and interest assessed against him on his federal income taxes for the years 1944, 1945, and 1946. The plaintiff subsequently filed claims for refund with respect to such payments of deficiencies and interest, which claims for refund were denied by the Commissioner of Internal Revenue. The plaintiff commenced this action for refund of such payments on June 26, 1951. It is the claim of the plaintiff that such deficiencies and interest were erroneously and illegally assessed and collected. The plaintiff has conceded with respect to the interest deduction of $4,298.98 claimed by him for the year 1944 that $310.81 of such claimed deduction represented an overpayment of interest and was excessive. As heretofore noted an interest deduction for the year 1944 was allowed in the amount of $154.69. Thus the amount of interest paid in 1944 which was disallowed by the Commissioner and which the plaintiff claims should have been allowed as a deduction is the sum of $3,833.48.

With respect to the interest payments on the notes, it is the claim of the plaintiff that each note constituted a bona fide indebtedness to Elsie M. Woodward and that interest payments thereon were deductible under § 23(b) of the Internal Revenue Code. It is the claim of the defendant that the interest payments for which deductions

were disallowed were not paid pursuant to an "indebtedness" as defined in such Section and are therefore not deductible. With respect to the loss on the sale of the Missouri State Life Insurance Company Stock, it is the claim of the plaintiff that such loss is deductible as a long term capital loss under §§ 23 and 117 of the Internal Revenue Code, 26 U.S.C.A. §§ 23, 117. It is the claim of the defendant that such loss is not deductible in computing the plaintiff's federal income tax for the year 1945 because the stock became worthless in a year prior to 1945.

§ 23(b) of the Internal Revenue Code, 26 U.S.C.A. § 23(b), provides, in part, as follows:

"In computing net income there shall be allowed as deductions:

\*      \*      \*      \*      \*      \*

"(b) Interest. All interest paid or accrued within the taxable year on indebtedness, except on indebtedness incurred or continued to purchase or carry obligations (other than obligations of the United States issued after September 24, 1917, and originally subscribed for by the taxpayer) the interest upon which is wholly exempt from the taxes imposed by this chapter."

The parties are in controversy as to whether the interest payments claimed as deductions by the plaintiff herein were paid on "indebtedness" within the meaning of the section above-quoted. It is to be noted that the term "indebtedness" as used therein is not limited to debts incurred in order to produce income, but includes any actual indebtedness, even though incurred for personal reasons of the taxpayer. See Preston v. Commissioner, 2 Cir., 1942, 132 F.2d 763, 766.

It is clear that where actual, enforceable indebtedness exists, the taxpayer may deduct interest payments on such indebtedness even though the debt be owed to the spouse. See Dorzback v. Collison, 3 Cir., 1952, 195 F.2d 69, affirming, D.C.Del., 1950, 93 F.Supp. 935, where the Court held not only that interest paid on a debt owed to the taxpayer's wife was deductible, but also that where the husband and wife agreed that she should take a share in the profits of the taxpayer's business in lieu of interest, that payments made to her pursuant to such agreement were deductible, even though the payments for three successive years ran $6,900, $7,600, and $10,000 on an original indebtedness of only $8,500. Where the law of the state in which the taxpayer resides does not recognize indebtedness between spouses there is some doubt as to whether the interest deduction should be allowed. See 4 Mertens, Law of Federal Income Taxation, § 26.05. But cf., Samuel Shapiro v. Comm'r, 1934, 29 B.T.A. 1012, allowing a Massachusetts taxpayer to deduct interest on a debt owed to his wife, even though the same was unenforceable, by analogy to a case where salary payments to a spouse were held deductible as a business expense. The Iowa law as to the right of a person to enforce the payment of a note executed by his or her spouse is somewhat lacking in clarity. The Iowa Married Women's Property Act appears as Chapter 597, Code of Iowa 1950, I.C.A. There has been no significant change in the Act since it was first enacted in 1873. See Note, Larceny or Embezzlement by One Spouse of the Other's Property (1940) 25 Iowa Law Review 351, 353-354. Under that Act the Iowa Supreme Court held, in 1899, that a married woman could not recover from her husband in an action at law on his personal contract. Heacock v. Heacock, 1899, 108 Iowa 540, 79 N.W. 353. However, in Rice v. Crozier, 1908, 139 Iowa 629, 117 N.W. 984, it was assumed that a wife could maintain an action against her husband during his lifetime on a note, and the wife's claim thereon against her husband's estate was held to be barred by the statute of limitations. The Heacock case was not discussed. In Rule v. Carey, 1916, 178 Iowa 184, 159 N.W. 699, wherein a wife was allowed to recover from her husband's estate on his promissory note, the Heacock case was criticized by the Court, and it was stated, 159 N.W. at page 701 that the language in the Heacock case to the effect that a wife cannot maintain an action against her husband on his personal contract is "much too broad". See also, Jones v. Jones, 1865, 19 Iowa 236 (wife can maintain replevin action against her husband); Logan v.

Hall, 1866, 19 Iowa 491 (wife can recover from husband's estate on his note to her); Hoaglin v. C. M. Henderson & Co., 1903, 119 Iowa 720, 94 N.W. 247, 61 L.R.A. 756 (rule of Heacock case does not prevent husband and wife from being business partners); McElhaney v. McElhaney, 1904, 125 Iowa 279, 101 N.W. 90 (wife can compel performance by husband of his agreement made in exchange for her lending money to him); Harman v. Harman's Estate, 1914, 167 Iowa 106, 149 N.W. 72 (wife can recover from husband's estate on note supported by valuable consideration); Latcham v. Latcham, 1923, 195 Iowa 221, 191 N.W. 977 (husband's note held unenforceable by his wife against husband's estate for lack of consideration, but Court notes that it is not approving the Heacock case). It thus appears that the Heacock case has never been expressly overruled by the Iowa Supreme Court, but that there is considerable doubt as to whether the Iowa Supreme Court would hold at the present time that a married woman could not maintain an action against her husband on his promissory note. It is clear, under the Iowa law, that she could enforce the note, assuming that it was given for valuable consideration, against her husband's estate. The husband and wife relationship does not make the indebtedness invalid. Thus, even if the Heacock rule still stands in Iowa, it does no more than temporarily disable the spouse from enforcing payment of the indebtedness. The inquiry under 26 U.S.C.A. § 23(b), relating to interest deductions for federal income tax purposes, relates only to the question of whether there exists an *indebtedness*. The indebtedness must be actual, unconditional, and enforceable in order for interest payments thereon to be deductible under such section. See Gilman v. Commissioner, 8 Cir., 1931, 53 F.2d 47, 80 A.L.R. 209. It appears that there is some doubt as to whether the wife's disability to sue the taxpayer in the present case, if there be such disability, renders the claimed indebtedness of such a character as to make the interest payments thereon non-deductible.

■ Where lack of consideration renders an obligation unenforceable there is no indebtedness within the scope of § 23(b) such as can be the basis for an interest deduction. Thus, deductions for interest payments were disallowed in the following cases: Simon Benson v. Commissioner (1927) 9 B.T.A. 279 (interest on note executed by taxpayer to his grandchild without consideration); Jamie A. Bennett v. Commissioner, 1939, 40 B.T.A. 745 (interest on note executed by taxpayer without consideration to trust for benefit of his children); Julius G. Day v. Commissioner, 1940, 42 B.T.A. 109 (interest on note executed by taxpayer without consideration to trust for son's benefit—even though secured by a mortgage under seal); Aron Mintz v. Commissioner (1944) P.H.Memo.T.C.Par. 44,147 (interest on debt secured by mortgage given to taxpayer's son); W. E. Denniston v. Commissioner (1945) P.H.Memo. T.C.Par. 45,368 (interest on moral obligations to give money to grandchildren pursuant to taxpayer's promise to his dying wife); cf., Sand Springs Railway Co. v. Commissioner, 1931, 21 B.T.A. 1291, 1310 (interest paid on bonds issued without consideration held not deductible).

In a few cases where obligations were enforceable under the local state law although incurred without consideration interest payments thereon have been held deductible. In Commissioner v. Park, 3 Cir., 1940, 113 F.2d 352, a note given to the taxpayer's wife was enforceable under Pennsylvania law, though lacking consideration, because it was under seal. Interest payments on such note were held deductible. In that case the Court noted that interest can be a payment for forbearance of a demand for payment of the principal as well as compensation for the use of money. Likewise, interest paid on a bond under seal, given without consideration, was held deductible in Preston v. Commissioner, 2 Cir., 1942, 132 F.2d 763. The Court, distinguishing its earlier case of Johnson v. Commissioner, 2 Cir., 1936, 86 F.2d 710, pointed out that but for the seal the deduction would not have been allowed. Cf., Estate of Rose M. Harter v. Commissioner, 1944, 3 T.C. 1151, involving the federal estate tax, wherein it was held that demand notes issued without consideration by the

decedent to her children, payable out of a trust she had set up for their benefit, which notes had been held enforceable in an action for construction of the trust brought in the state courts of Ohio, were properly excluded from the gross amount of the trust estate (which trust estate was included in the decedent's estate for estate tax purposes). With respect to deductions for interest payments under the federal income tax law, in the case of Gilman v. Commissioner, 8 Cir., 1931, 53 F.2d 47, 80 A.L.R. 209, the Court of Appeals for the Eighth Circuit emphasized the fact that the notes in question were not enforceable under Iowa law. But cf., Francis Henry French v. Commissioner (1942) P.H.Memo.B.T.A., p. 42–1396, a gift tax case, where the Board of Tax Appeals questioned whether the Iowa statute making all signed contracts import a consideration was applicable.

In Iowa a note executed as a gift is regarded as a promise to make a gift in the future and is not enforceable. See, DePenning v. Bedell, 242 Iowa 102, 1950, 44 N.W.2d 385; Latcham v. Latcham, 1923, 195 Iowa 221, 191 N.W. 977; Meginnes v. McChesney, 1916, 179 Iowa 563, 160 N.W. 50, L.R.A. 1917 E, 1060; Simpson Centenary College v. Tuttle, 1887, 71 Iowa 596, 33 N.W. 74. A note lacking consideration would not be enforceable in Iowa even if under seal, for Iowa over one hundred years ago by statute abolished private seals and made them of no effect. Code of Iowa, 1851, § 974. That statute now appears as Section 537.1, Code of Iowa, 1950, I.C.A. In Code of Iowa, 1950, § 537.2, I.C.A. it is provided that all signed written contracts import a consideration, and in § 541.24 it is provided that negotiable instruments are deemed prima facie to have been issued for valuable consideration. In Iowa and in most jurisdictions gratuitous notes are not enforceable. Such being the case such notes cannot meet the test of "indebtedness" under § 23(b) of the Internal Revenue Code. The few cases to the contrary are based upon peculiar local law.

There are a number of decisions on the question of what constitutes sufficient consideration to support an "indebtedness," the interest on which is deductible under § 23(b) of the Internal Revenue Code. It is settled that love and affection is not sufficient consideration. Julius G. Day v. Commissioner, supra. Neither is a moral obligation based on a promise to one's dying wife. W. E. Denniston v. Commissioner, supra. Similarly, in the case of Henry Dourif v. Commissioner (1943) P.H. Memo.T.C.Par. 43,453 payments denominated as interest made by a taxpayer to his wife in return for her letting him use her property in his business were held not deductible because no indebtedness was proved. Cf., Ludwig Bendix v. Commissioner, 1950, 14 T.C. 681 (interest paid to children for use of securities claimed to have been given to them earlier). In the following cases the indebtedness was held to be supported by sufficient consideration to warrant deductions for interest paid thereon: William Venning Couchman v. Commissioner, 1934, 30 B.T.A. 118 (interest paid on note given to taxpayer's brother representing appreciation in value of seat on stock exchange, where brother had consented to loan from their father's estate through which taxpayer was enabled to buy such seat); Estate Planning Corp. v. Commissioner, 2 Cir., 1939, 101 F.2d 15 (interest paid on bonds executed in payment for good will of a business); D. S. DeVan, Executor, v. Commissioner, 1936, 34 B.T.A. 580 (interest paid on note given to taxpayer's wife to induce her to dismiss her divorce action against him and resume marital relations).

The form of the obligation is sometimes determinative. The cases of Commissioner v. Park and Preston v. Commissioner, supra, where instruments were held enforceable though gratuitous because they were under seal, turned on the form of the obligation. It is stated in Deputy v. du Pont, 1940, 308 U.S. 488, 497, 60 S.Ct. 363, 368, 84 L.Ed. 416:

" * * * although an indebtedness is an obligation, an obligation is not necessarily an 'indebtedness' within the meaning of § 23(b)."

See also to this effect, Downey Co. v. Commissioner, 8 Cir., 1949, 172 F.2d 810, 812. In Brown-Rogers-Dixson Co. v. Commis-

24

sioner, 4 Cir., 1941, 122 F.2d 347, 350, it is stated.:

"It has been repeatedly held that one of the fundamental characteristics of a debt is a definite determinable date on which the principal falls due."

In Gilman v. Commissioner, 8 Cir., 1931, 53 F.2d 47, 50, 80 A.L.R. 209, it is stated:

"The term 'indebtedness' as used in the Revenue Act implies an uncondi-· tional obligation to pay."

In that case the Court, while holding that the notes in question were unenforceable for lack of consideration, also indicated that the notes fell short of the statutory definition of indebtedness because they were conditional as to the obligation to pay, i. e., were to become void in the event of the death of the payee. The definition of indebtedness formulated in the Gilman case has been cited in many cases. In the cases of Edwin M. Klein v. Commissioner, 1934, 31 B.T.A. 910, and Autenreith v. Commissioner, 3 Cir., 1940, 115 F.2d 856, the contingent nature of the obligations were stressed in holding interest payments thereon not deductible. The Gilman case was relied on in a 1949 decision by the Court of Appeals for the Eighth Circuit, holding that a note was not "indebtedness" for purposes of computing borrowed capital for purposes of the excess profits tax because the note was to be payable only if the taxpayer's factory did not pay out a certain amount in wages over a certain period. Downey Co. v. Commissioner, 8 Cir., 1949, 172 F.2d 810. But cf., Journal Co. v. Commissioner, 7 Cir., 1942, 125 F.2d 349 (indebtedness contingent on court approval of a sale) ; Arthur R. Jones Syndicate v. Commissioner, 7 Cir., 1927, 23 F.2d 833 (usurious interest held deductible). See also Pierce Estates, Inc., v. Commissioner, 3 Cir., 1952, 195 F.2d 475 (contingent liability for interest). There can be no indebtedness where there is no definite undertaking to pay. Sommers v. Commissioner, 2 Cir., 1952, 193 F.2d 609; Johnson v. Commissioner, 8 Cir., 1939, 108 F.2d 104. And interest on a claimed indebtedness is not deductible where the loan has been repaid. Edward A. Myers v. Commissioner, 1948, 11 T.C. 164; Ralph C. Baker v. Commissioner (1951) P.H.Memo.T.C.Par. 51,358. For cases involving interest on corporate indebtedness to owners, subsidiaries, and to other corporations having the same owners, see John Kelley Co. v. Commissioner, 1946, 326 U.S. 521, 66 S.Ct. 299, 90 L.Ed. 278; Commissioner v. O. P. P. Holding Corp., 2 Cir., 1935, 76 F.2d 11; Commissioner v. Union Motors, Inc., 9 Cir., 1941, 119 F.2d 93.

In the present case the obligations are absolute in form. The notes are unconditional promises to pay on demand. As heretofore noted, a note executed as a gift is not enforceable under Iowa law, and under the more general rule would not be a proper basis for an interest deduction under § 23(b) of the Internal Revenue Code. The next inquiry must be as to whether the notes in question are supported by valuable consideration. The consideration claimed for all but one of the notes is the retransfer of the insurance policies in question to the taxpayer by his wife in exchange for such notes.

There are a number of cases involving the deductibility of interest payments on claimed indebtedness owed to a relative of the taxpayer, or to a trust over which he has control, where funds which were the subject of a loan to the taxpayer were originally given to such relative or trust by the taxpayer, or where the taxpayer purported to incur indebtedness to repurchase property originally given by him to such relative or trust. The cases are analogous to the first two steps involved in the present case, i. e., the claimed gift of the securities to the taxpayer's spouse and his claimed subsequent repurchase of them from her with the notes in question.

In the case of Gilman v. Commissioner, supra, the taxpayer claimed a deduction for interest payments on notes given by him to his wife and children to purchase their interests in real estate contracts claimed to have been assigned to them by the taxpayer the previous year. The Court of Appeals for the Eighth Circuit upheld the Board of Tax Appeals in holding that there in fact never had been an effective assignment of the contracts, and thus that the notes were given without consideration.

The notes were also held to be unenforceable because they were conditional in nature in that they were to be void upon the death of the payee. The notes being unenforceable, the claimed deduction for interest paid on them was disallowed.

In Johnson v. Commissioner, 2 Cir., 1936, 86 F.2d 710, the taxpayer borrowed $400,000 from a bank. He then purported to give the $400,000 to his wife, who thereupon put it in a trust, with a trust company as trustee. The income of the trust was to be used to pay the taxpayer's life insurance premiums, the balance to be paid to the wife as beneficiary of the trust. Five days later the trust made a "loan" of the $400,000 to the taxpayer in return for his demand note, which "loan" he used to repay his debt to the bank. The taxpayer thereafter paid interest on his note held by the trust. The Court held that such interest payments were not deductible because the note was without consideration. The Court reasoned that there was no consideration for the note because the original "gift" to the wife was invalid, due to the fact that the taxpayer never surrendered control of the funds to her, but delivered them to her only upon the understanding that they would be put in the trust and that the trust would then "lend" the money back to the taxpayer.

In the case of Fred E. Barringer v. Commissioner (1938) P.H.Memo.B.T.A. Par. 38,220, the taxpayer purported to give his wife a half share in a partnership. Later he "bought" it back from her, giving in payment his demand note, on which he paid her 12% interest. The Board of Tax Appeals held that the alleged gift was not bona fide and that there was thus no consideration for the notes. Being without consideration, the notes were unenforceable and interest paid on them was not deductible.

In Johnson v. Commissioner, 8 Cir., 1939, 108 F.2d 104, the taxpayer gave shares of stock to her sisters, which shares of stock were then put into a trust for their benefit for life, with a reversion to the taxpayer, who was also named trustee. Subsequently the shares were converted into cash by the taxpayer. The other sisters later agreed to let the taxpayer borrow the funds ob-

tained from such sale, in return for the taxpayer's acknowledgment of indebtedness to each of them and for her promise to pay each of them a certain amount each year for life as interest on such indebtedness. The Court of Appeals for the Eighth Circuit held that the yearly payments to each sister were not deductible by the taxpayer as interest on indebtedness. The Court held that there was in fact no indebtedness because (1) the taxpayer did not unconditionally undertake to repay the amounts borrowed, and (2) it was apparent that the agreement merely substituted the taxpayer's personal obligation to make the yearly payments in return for the consent of the sisters that the trust be terminated. Thus, there being no indebtedness apart from the yearly payments on which to predicate the payment of interest the yearly payments could not be deductible as interest on indebtedness.

In the case of Marian Bourne Elbert v. Commissioner, 1941, 45 B.T.A. 685, the taxpayer transferred $300,000 to herself and her husband as trustees in trust for their daughter. Four days later the trustees made a loan of $298,000 to the taxpayer, on her demand note. The Board of Tax Appeals disallowed the taxpayer's claimed deduction for interest payments on the note, stating, 45 B.T.A. at page 690:

"Since it was intended from the start that the fund should be transferred back to the petitioner, under the terms set out, no real gift occurred. The trust was merely a convenient conduit, and petitioner in effect is claiming a deduction for interest on money 'loaned' to herself."

In H. M. Rubin v. Commissioner (1941) P.H.Memo.B.T.A. Par. 41,405, the taxpayer purported to give his rendering business to his wife in 1931, but he continued to manage and control it. In 1933 the taxpayer's wife sold the business to a corporation controlled by the taxpayer, receiving a note in payment. Subsequently the taxpayer reacquired the business by assuming personally the liability on the note. The Board of Tax Appeals held that the note was unenforceable for lack of con-

sideration, disallowed the claimed deduction for interest paid thereon, *and imposed the 50% fraud penalty on the taxpayer.*

In the case of Harry L. Davidson and Bessie L. Davidson v. Commissioner (1942) P.H.Memo.T.C.Par. 42,536, a husband and wife were business partners. The partnership paid out $5,000 to each of the partners by check. The partners then transferred the money to a trust for the benefit of their children, of which the wife was trustee. The trust then made a loan of $10,000 to the partnership, taking its note. This transaction was repeated 5 times in one year. The Tax Court held that interest paid on such notes was not deductible, since the partnership was, in effect, paying interest on a "debt" owed to itself.

In the case of Preston v. Commissioner, 2 Cir., 1942, 132 F.2d 763, the taxpayer borrowed $125,000 from a bank. He then paid the money over to a trust for the benefit of a relative. He next borrowed the money back from the trustee, giving in exchange his bond under seal. With the proceeds of the loan he paid back the bank. The Court of Appeals for the Second Circuit held that the bond given to the trust by the taxpayer constituted a valid indebtedness and that interest paid thereon by the taxpayer was deductible. The Court distinguished its earlier case of Johnson v. Commissioner, supra, by pointing out that the bond, being under seal, was enforceable though gratuitous, unlike the note in the Johnson case. Thus the Preston case is *not* authority for the proposition that interest is deductible where paid on a gratuitous obligation incurred as a result of a multiple-step transaction. The result in the Preston case was based solely on the form of the obligation, like the case of Commissioner v. Park, supra. Apparently the taxpayer in the Preston case could have reached the same result by simply giving his relative his bond under seal and paying interest thereon.

In the case of Montgomery v. Thomas, 5 Cir., 1944, 146 F.2d 76, the taxpayer had received a large building contract. In 1936 he formed a corporation to which he assigned the contract. The voting stock of the corporation was owned solely by the taxpayer and his wife. The corporation had 96 shares of $10 par value non-voting stock which the taxpayer bought and divided equally among his three minor children. Dividends on such stock were paid to the taxpayer, as trustee for the children, in the total sum of over $37,000 in 1936 and over $27,000 in 1937. In 1938 the father borrowed $25,000 from his children. He repaid the loan in 1940. Interest was paid on the loan by the taxpayer at 6% per annum during the period the loan was outstanding. The Court allowed the deductions claimed for such interest payments and stated, 146 F.2d at page 81:

> "The fact that he borrowed money from his children is the sole factor creating suspicion. Had he borrowed from a bank, no question would have been raised. That he actually borrowed the money is conceded; when conceded, his obligation to pay interest until the time he repaid the loan follows as a matter of course."

See also, Guaranty Trust Co. of New York v. Commissioner, 1937, 35 B.T.A. 916, affirmed 2 Cir., 1938, 98 F.2d 62, holding, on facts similar to those in the Johnson case, supra, that the "debt" to the trust was not valid for purposes of the federal estate tax; and Empire Trust Co. v. Commissioner, 1940, 41 B.T.A. 839, affirmed 2 Cir., 1941, 119 F.2d 421, involving a capital loss deduction. For conflicting cases on whether interest payments on "indebtedness" incurred gratuitously are *gifts*, subject to the federal gift tax, see Charles Steele v. Commissioner, 1938, 38 B.T.A. 589 (not a gift), and Francis Henry French v. Commissioner (1942) P.H.Memo.B.T.A. p. 42–1396 (gift).

With the exception of the $1,000 note given for the cash loan, it is the claim of the taxpayer in the present case that the notes in question were executed in favor of his wife in order to buy back the policies he had previously given to her. In Montgomery v. Thomas, supra, interest paid by the taxpayer on money borrowed from his minor children, which fund could be traced to a gift made by the taxpayer to them, was held deductible. Thus the fact that the claimed indebtedness in the present case was incurred to buy back the subject of a

previous gift to the spouse of the taxpayer does not, of itself, show a lack of consideration for such indebtedness. The plaintiff testified that he bought the policies back from his wife so that he could put them in a trust for her benefit. It was held in Helvering v. Hutchings, 1941, 312 U.S. 393, 61 S.Ct. 653, 85 L.Ed. 909, that a gift to a trust can be regarded as a gift to the beneficiary thereof. However, it has been held that the fact that indebtedness has been incurred in order to make a gift or that it has been incurred for the benefit of another does not disqualify the indebtedness as a basis for an interest deduction if the indebtedness is enforceable. Preston v. Commissioner, supra; Rose B. Larson v. Commissioner, 1941, 44 B.T.A. 1094; George A. Neracher v. Commissioner, 1935, 32 B.T.A. 236. Thus the fact that the plaintiff incurred the claimed indebtedness in the present case in order to put the policies in trust for his wife's benefit does not of itself mean that the claimed indebtedness is without consideration and unenforceable.

The present case, however, does not involve simply the incurring of indebtedness in order to repurchase something previously given to the spouse. Neither does it involve merely the incurring of indebtedness in order to make a gift to the spouse. It involves a situation where the taxpayer made an alleged gift to his wife, then purported to buy the subject of the gift back from her, giving notes in payment, in order to put the same in trust for her benefit.

It has often been stated that an income tax deduction is a matter of legislative grace and that a taxpayer has the burden of proving his right to a claimed deduction. See, e. g., Interstate Transit Lines v. Commissioner, 1943, 319 U.S. 590, 593, 63 S.Ct. 1279, 87 L.Ed. 1607; Norton v. Commissioner, 8 Cir., 1951, 192 F.2d 960, 961-962; Omaha Nat. Bank v. Commissioner, 8 Cir., 1950, 183 F.2d 899, 902; Holdcroft Transp. Co. v. Commissioner, 8 Cir., 1946, 153 F.2d 323, 325. It is also stated that the Commissioner's rulings in disallowing claimed deductions are presumptively correct, and that the burden is on the taxpayer to overcome such presumption. See, e. g., Jones v. Commission-

er, 9 Cir., 1939, 103 F.2d 681, 684; Brown v. Commissioner, 5 Cir., 1927, 22 F.2d 797, 798. Thus, a taxpayer claiming a deduction for interest paid on indebtedness must prove that the interest was, in fact, paid on indebtedness. Wetterau Grocer Co., Inc., v. Commissioner, 8 Cir., 1950, 179 F.2d 158, 160; First Mortgage Corporation of Philadelphia v. Commissioner, 3 Cir., 1943, 135 F.2d 121, 124; Zimmerman Steel Co. v. Commissioner, 8 Cir., 1942, 130 F.2d 1011, 1012, 143 A.L.R. 1054. Moreover, it is a well established rule that a taxpayer who sues for a refund of income taxes claimed to have been illegally or erroneously exacted has the burden of establishing the invalidity of such exaction. See, e. g., United States v. Anderson, 1926, 269 U.S. 422, 443, 46 S.Ct. 131, 70 L.Ed. 347; Sherrill v. Paschal, 8 Cir., 1948, 165 F.2d 122, 123; G. E. Employees Securities Corp. v. Manning, 3 Cir., 1943, 137 F.2d 637, 638.

In order to establish his right to recover in the present case, the plaintiff has the burden of proving the validity of the claimed indebtedness. Such indebtedness could be a valid indebtedness only if it were incurred for a valuable consideration. In order to establish that the claimed indebtedness on the notes other than the $1,000 note was incurred for a valuable consideration, it would seem that the burden is on the plaintiff to prove both of the following propositions: (1) that there was an absolute bona fide gift of the policies to his wife, and (2) that there was an actual bona fide sale of the policies by her back to the plaintiff; i. e., that the notes were in fact executed in exchange for her transferring the policies back to him.

First, with respect to the alleged gift of the policies to the wife. In the case of Apt v. Birmingham, D.C. Iowa, 1950, 89 F.Supp. 361, 370, the requirements of a valid gift under the Federal Revenue Acts, as established by a great number of decided cases, were set out as follows:

"(1) a donor competent to make the gift, (2) a donee capable of taking the gift, (3) a clear and unmistakable intention on the part of the donor to absolutely and irrevocably divest himself of all present and future title, dominion

and control of the subject matter of the gift, (4) the irrevocable transfer of legal title and of the dominion and control of the gift to the donee, (5) a relinquishment by the donor of dominion and control of the subject matter of the gift by delivery from the donor to the donee."

In the present case there can be no question as to the first two requirements set out above being satisfied. With respect to the third requirement, the intent to make an irrevocable gift, the testimony of the plaintiff stands uncontradicted in the record that he "gave" the policies to his wife "absolutely," and that he did not retain any rights in the policies or any incidents of ownership. He transferred the policies to her in 1937 and did not obtain the reassignment of them until late in 1939 or early in 1940. It does not appear that at the time the policies were transferred to the wife that the plaintiff intended ever to reacquire them. He included the policies in his federal gift tax return for the year 1937. It would appear that the plaintiff has satisfied the requirement of the intent to make an irrevocable gift. The parties have referred to the instruments executed by the plaintiff on August 18, 1937, with respect to the Mutual Benefit policies and on September 13, 1937, with respect to the Equitable policies as "assignments." If it be conceded that such instruments were assignments to Elsie M. Woodward, then it would appear that the fourth requirement, the irrevocable transfer of legal title, was accomplished. See Petty v. Mutual Benefit Life Ins. Co., 1944, 235 Iowa 455, 15 N.W.2d 613; Provident Mut. Life Ins. Co. v. Bennett, D.C. Iowa, 1944, 58 F.Supp. 72, 77; New York Life Ins. Co. v. Rees, 8 Cir., 1927, 19 F.2d 781; In re Jacobson, D.C.N.J., 1938, 24 F. Supp. 749; 29 Am.Jur., Insurance, §§ 515, 516, 521; 45 C.J.S., Insurance, § 435(b); Annotation, 114 A.L.R. 775. The fifth requirement is that of delivery. The record is silent as to whether the plaintiff ever manually delivered the policies to his wife. However, it is clear that the assignments were recorded on the records of the insurance companies, and it is doubtful whether anything further would be required to con-

stitute a valid delivery. See Petty v. Mutual Benefit Life Ins. Co., supra; Northwestern Mut. L. Ins. Co. v. Wright, 1913, 153 Wis. 252, 140 N.W. 1078. Acceptance of the gift can be implied from the assignee's failure to dissent after knowledge of the assignment. 29 Am.Jur., Insurance § 511; 45 C.J.S., Insurance § 426.

It would seem that the plaintiff has established the first proposition outlined above—that he made an absolute, bona fide gift of the policies to his wife.

Next with respect to the alleged sale of the policies back to the plaintiff. A family relationship does not preclude arrangements or transactions between family members which will affect tax liability. See Apt v. Birmingham, supra, 89 F.Supp. at page 372, and cases cited therein. However, it was stated in Commissioner v. Tower, 1946, 327 U.S. 280, 291, 66 S.Ct. 532, 537, 90 L.Ed. 670, 164 A.L.R. 1135, that:

"* * * transactions between husband and wife calculated to reduce family taxes should always be subjected to special scrutiny."

See also White v. Fitzpatrick, 2 Cir., 1951, 193 F.2d 398, certiorari denied, 1952, 343 U.S. 928, 72 S.Ct. 762.

In Century Electric Co. v. Commissioner, 8 Cir., 1951, 192 F.2d 155, 159, certiorari denied, 1952, 342 U.S. 954, 72 S.Ct. 625, it was stated:

"The transaction here involved may not be separated into its component parts for tax purposes. Tax consequences must depend on what actually was intended and accomplished rather than on the separate steps taken to reach the desired end."

Similarly, in Tennessee, Alabama & Georgia Ry. Co. v. Commissioner, 6 Cir., 1951, 187 F.2d 826, 830, it was pointed out that a taxpayer cannot "atomize" a transaction or plan into several steps and insist that one step be treated as if it stood alone. Consideration must be given to all relevant circumstances and no single element is conclusive. B. M. C. Mfg. Corp. v. Commissioner (1952) T.C. Memo Opinion, Docket No. 31588, reprinted in 20 U.S.L.Week 2507. Thus in the present case it would be un-

realistic to focus attention solely on the transfer of the policies from Elsie M. Woodward to the plaintiff and his execution of the notes to her.

When all relevant factors are considered it does not appear that the transaction by which the plaintiff reacquired the insurance policies from his wife was a transaction which had economic reality. It appears that prior to the time when Elsie M. Woodward assigned the policies back to the plaintiff that the plaintiff had determined to put them in a trust of which his wife would be a lifetime income beneficiary. It appears that he discussed these plans with her prior to the assignment of the policies back to him. He testified that he did not ask her whether she would give the policies back to him. It does not appear that there was any bargaining between them with respect to the matter. The plaintiff did testify on cross examination that he gave her the notes because it was one way of getting the policies back, but he also testified that he had no other reason for giving her the notes than to provide further protection for her. The notes, though originally delivered to Elsie M. Woodward, were subsequently kept in the plaintiff's office safe. The plaintiff's office secretary testified that she, the plaintiff, and the plaintiff's son knew the combination of such safe, but that she did not know whether the plaintiff's wife knew it. The plaintiff apparently handled most of his wife's financial and business activities, with his secretary carrying out most of the details. It is noted that the plaintiff's wife did not testify as to the validity of the sale of the policies back to the plaintiff and that no explanation was made for her not testifying. Cf., Poplet v. Surface Transp. Corp., City Ct., N.Y., 1952, 109 N.Y.S.2d 871, 876–880. She alone could have testified as to whether the transfer of the policies by her to the plaintiff was induced by and was in exchange for his issuing the notes to her. It is the claim of the defendant that, because the plaintiff and his wife both contemplated and understood that he was placing the policies in a trust of which she was an income beneficiary, he was merely a previously-arranged-for conduit, and that the execution of the notes was a transaction which was benevolent in character. The plaintiff claims that his wife conditioned the re-transfer of the policies to him upon the execution and delivery to her of notes equal in principal amount to the value of the policies, and because she did so the transaction did not have the status claimed for it by the defendant. The policies had been a gift from the plaintiff to his wife and it was understood that they were to be placed in a trust of which she was an income beneficiary. The attitude of the wife as reflected in her claimed demand for the notes under those circumstances would seem to differ from her attitude after she had obtained the notes. She has never made any request for payment of any part of the principal, nor did she complain when interest due on the notes was three years in arrears. The plaintiff's testimony at the trial and his actions at the time the notes were executed both indicated a design on his part to make gifts to his wife and to provide for her benefit and protection. It would seem that the execution of the notes was an additional act of benevolence on his part rather than a condition exacted by her for the reassignment of the policies.

As indicated by the foregoing cases, where lack of consideration for an obligation renders it unenforceable under state law, there can be no "indebtedness" within the meaning of § 23(b) of the Internal Revenue Code. It would seem that the better view would be that the fact that an obligation would be enforceable under state law would not, of itself, compel the conclusion that the interest thereon would be deductible for federal income tax purposes. The Park case, supra, which held interest paid on a note given without consideration deductible because of the local law as to the effect of a seal, has been criticized because such a view destroys uniformity in the application of federal tax statutes and thus promotes confusion in administration and inequality in tax burdens. See Note, Income and Gift Tax Avoidance by Deductions for Interest on Promissory Notes (1940) 50 Yale L.J. 151–158; Comment (1941) 9 Duke Bar Ass'n J. 74. In

the note in the Yale Law Journal it was stated (at p. 152):

> "Although states can of course create legal rights, the Federal Revenue Acts and the courts have the power to designate what rights are taxable."

Cases cited by the author for this proposition were: Morgan v. Commissioner, 1940, 309 U.S. 78, 80, 60 S.Ct. 424, 84 L.Ed. 585; Lyeth v. Hoey, 1938, 305 U.S. 188, 193–194, 59 S.Ct. 155, 83 L.Ed. 119, and Burnet v. Harmel, 1932, 287 U.S. 103, 110, 53 S.Ct. 74, 77 L.Ed. 199. In the latter case it was stated, 287 U.S. at page 110, 53 S.Ct. at page 77:

> "State law may control only when the federal taxing act, by express language or necessary implication, makes its own operation dependent upon state law."

§ 23(b) of the Internal Revenue Code refers only to interest on "indebtedness." The federal courts have construed this section as necessarily implying that an obligation, to constitute an "indebtedness" within the meaning of § 23(b), must be enforceable under state law. It does not logically follow that the section also necessarily implies that anything that a state court would accept as an enforceable obligation would have to qualify as an "indebtedness" under the federal statute. Thus in the present case, even if the Iowa courts might hold the plaintiff liable to his wife on the notes in question, the apparent lack of economic reality in the situation still ought to disqualify the notes as "indebtedness" so far as the application of § 23(b) of the Internal Revenue Code by the federal courts is concerned. It would seem that the plaintiff has failed to sustain his burden of proving his right to the claimed deductions for interest paid on the notes other than the $1,000 note.

■ The interest payments for the years 1945 and 1946 on the $1,000 note have a different status. As heretofore noted, that note was executed in exchange for a $1,000 loan in cash. It was supported by valuable consideration, and, subject to the possible disability of the wife to sue her husband thereon in the Iowa courts, was an unconditional, enforceable indebtedness. Hence the interest paid on it in the years 1945 and 1946 was properly deductible from the plaintiff's income for those years for federal income tax purposes.

The matter of the disallowance of the deduction claimed by the plaintiff on his income tax return for the year 1945 for his long term capital loss on the sale of his Missouri State Life Insurance Company Stock will next be considered.

Under Internal Revenue Code § 23(e), 26 U.S.C.A. § 23(e), losses sustained by individuals are deductible "if incurred in any transaction entered into for profit, though not connected with the trade or business". Under § 23(g) it is specified that losses from sales or exchanges of capital assets shall be allowed only to the extent provided in § 117. In § 23(g) (2) it is stated that if "securities" become worthless the loss is considered to be a capital loss. In § 23(g) (3) "securities" are defined to include shares of stock in a corporation. Corporate stock comes within the definition of "capital assets" in § 117(a) (1). Under § 117(b), only 50% of a capital gain or loss is taken into consideration in computing net income if the capital asset has been held for more than six months.

In the present case the plaintiff bought Missouri State Life Insurance Company stock in 1930 and sold it at a loss in 1945. The plaintiff claims that the long term capital loss provisions are applicable and that he should have been allowed to deduct half of such loss from his 1945 income on his income tax return for that year. The Commissioner of Internal Revenue determined that the stock in question had become worthless in a prior year, and thus could not be used as a loss deduction for the year 1945. See Internal Revenue Regulations (26 C.F.R.) §§ 29.23(e)–1(b), 29.23(e)–4.

■ There have been many decisions on the questions of the appropriate year for taking a loss on corporate stock for federal income tax purposes and on when to consider it as being worthless. The cases indicate that the determination of when corporate stock is worthless is largely a factual matter, depending on the facts of the particular case. In some cases the subjective test of when the taxpayer knew it was worthless has been employed. See Smith

v. Helvering, 1944, 78 U.S.App.D.C. 342, 141 F.2d 529. The more generally prevailing view, however, seems to be that the test is an objective one which depends on "identifiable events" which point to the fact of worthlessness. See, e. g., First Nat. Bank of Minneapolis v. United States, D.C.Minn., 1944, 58 F.Supp. 425, 427, in which case there is an excellent review of the cases. In Nelson v. United States, 8 Cir., 1942, 131 F.2d 301 it was held that even though it appeared that corporate stock was worthless in a prior year, if such stock at that time had potential value, a loss on it sustained in a subsequent year was deductible. It was stated in Keeney v. Commissioner, 2 Cir., 1940, 116 F.2d 401, 403:

> "It is true that some liberality is accorded to the taxpayer, and this has taken the form of requiring that worthlessness be established by some identifiable event. United States v. S. S. White Dental Mfg. Co., 274 U.S. 398, 401, 47 S.Ct. 598, 71 L.Ed. 1120. This does not mean, however, that the taxpayer can himself fix the identifiable event by selling for a nominal amount stock that. had become worthless in a prior year. De Loss v. Commissioner, 2 Cir., 28 F.2d 803. Nor can he postpone his claim of loss until only an 'incorrigible optimist' would fail to know that the stock had become worthless at an earlier date. A finding of worthlessness depends on all the facts of the particular case reasonably leading to that conclusion."

As heretofore noted the determination made by the Commissioner of Internal Revenue is presumptively correct and the burden is on a taxpayer who disputes its correctness to prove that the Commissioner's determination was erroneous. However, such presumption does not amount to substantive evidence in the case. Gillette's Estate v. Commissioner, 9 Cir., 1950, 182 F.2d 1010, 1013. The effect of such presumption is only to change the burden of going forward with the evidence. It was stated in Gazette Publishing Company v. Self, D.C.Ark., 1952, 103 F.Supp. 779, 783:

> "It is axiomatic that any determination by the Commissioner in any tax case is presumed to be correct. So well established is this principle that the citation of authorities and decisions of court would be academic. But such presumption only places upon the taxpayer the burden of first going forward with the evidence. If and when the taxpayer introduces any evidence that the Commissioner's determination is in error, this presumption is no longer of probative force and effect, and the issue then will be decided upon the preponderance of the evidence adduced at the trial of the cause."

In the present case the plaintiff introduced evidence to prove that the stock was purchased for $690 in 1930 and sold for $289.90 in 1945. The defendant offered no evidence to show that the stock became worthless in a prior year, as determined by the Commissioner, other than the statement of a Mr. Robert B. Thies, an Internal Revenue Agent, that in one of the investment services which he had not read it was indicated that the Treasury Department had ruled that the stock of the Missouri State Life Insurance Company became worthless in 1933. Reference was made in the plaintiff's brief to a similar holding in the case of Fitzhugh v. Nashville Trust Company (D.C.Tenn.1942), C.C.H.U.S. Tax Cases 42-2 No. 9611. However, as pointed out by the plaintiff, the erroneousness of those determinations is made manifest by the record in the present case, wherein it is shown that such stock actually had value in 1945 equal to over 1/3 of its 1930 value. In the Fitzhugh case and in numerous other reported cases the financial fortunes of the Missouri State Life Insurance Company are discussed. However, the Court's personal knowledge of those cases would not warrant its taking judicial notice of the facts adjudicated therein. Previous decisions as to when stock became worthless are not binding in subsequent litigation between different parties. A case illustrative of this rule is the case of G. E. Employees Securities Corp v. Manning, 3 Cir., 1943, 137 F.2d 637, wherein a taxpayer was allowed to deduct a loss on the sale of corporate stock in 1936, as against the Commissioner's determination that the stock had become worthless in

32

a prior year. In that case it was noted that in previous cases the same stock had been held: (1) not worthless in 1932, (2) worthless in 1932, and (3) not worthless prior to 1938.

It would appear that the plaintiff in the present case has rebutted the presumption of the correctness of the Commissioner's determination, and has sustained the burden of proving his right to his claimed deduction for the long term capital loss sustained by him on the sale of the corporate stock in question.

Judgment will be entered in accordance with this opinion.