OPINION. Oppek, Judge: Eegardless of whether consideration is a true prerequisite to the deductibility of interest where a distribution[1] to stockholders of bonds valid on their face does not concededly constitute a gift,[2] as this case is presented our finding of fact[3] that petitioner received valuable consideration for the issuance of its debentures disposes of the issue in petitioner’s favor. Petitioner was organized in December 1945 and commenced its operations in January 1946. Prior to these dates, as early as July 1945, Walter was notified that he had been awarded the Stewart-Warner distributorship, and had received a written contract embodying his oral agreement in October or November of that year for his individual signature. Respofident does not deny, and the record corroborates, that Walter, individually, received merchandise from Stewart-Warner at least as early as December 1945, before petitioner commenced to do business. Petitioner had not yet been organized as of the date when Walter added the term “Inc.” to the written agreement and returned it to Stewart-Warner for final execution with notification of the intention to incorporate the business. And regardless of the effect of final execution of the written document by Stewart-Warner, petitioner’s minutes of a stockholders’ meeting shortly after its incorporation clearly establish that it issued the debentures in exchange for Walter’s agreement to transfer his rights under the distributorship arrangement under which he had been receiving inventory from Stewart-Warner prior to that time. Stewart-Warner’s final execution of the amended written franchise merely signified its formalization of a consent already given to petitioner’s substitution under the continuing agreement. We regard Floyd D. Akers, 6 T. C. 693, as distinguishable on its facts. The situation there arose from the dissolution of a corporation, not its creation; the asset causing the controversy was not a franchise but “good will” or going-concern value; and the terms of the franchises there involved were different from those of the Stewart-Warner distributorship in several respects, notably that here the franchise was assignable with the licensor’s consent, which was obtained,[4] and the use of the trade name was not “specifically reserved” as the property of the licensor. Finally, Walter agreed to and actually did transfer the franchise here while in the Akers case the corporation permitted it to expire upon its own dissolution. In these circumstances, we have found that petitioner received consideration for the issuance of the debentures by Walter’s transfer of his rights under the distributorship. We are satisfied, if such a finding is necessary,[5] that substantial value attached to those rights. Even assuming a 1-year life for the franchise, the expectation of net profit from the distributorship in its first year, established by Walter’s uncontradicted testimony as to the basis for. such expectation, would equal the face amount of the debentures. While his estimate was shown by subsequent events to be overly optimistic, it appears by the same token that the value was still large. Moreover, we see no reason to disbelieve Walter’s testimony that other valuable franchises held by him, individually, were transferred to petitioner in this exchange. Nor can respondent’s contention that these debentures were in fact equivalent to pref. rred sto<k he taken seriously. Unlike any of the cases in this field to which we have been referred these debentures have none of the attributes of preferred stock. They fulfilled all the formal requirements of a short-term bond; they had a maturity date fixed “in the reasonable future,” 10 years after the date of issue; they afforded no basis for participation in management; and they imposed on petitioner a fixed liability to pay interest 4 times annually irrespective of earnings or emergencies, and at a modest rate of 3% per cent. Cf. Charles L. Huisking & Co., 4 T. C. 595. No unusual unbalance in petitioner’s ratio of equity capital to indebtedness resulted from their issue. Cf. Mullin Building Corporation, 9 T. C. 350, affd. (C. A. 3) 167 F. 2d 1001; Swoby Corporation, 9 T. C. 887. As we have found, new property did flow to petitioner upon their issuance. Cf. 1432 Broadway Corporation, 4 T. C. 1158, affd. (C. A. 2) 160 F. 2d 885. In these circumstances, that Walter and petitioner subordinated the debentures to all other creditor claims approximately 2 years after their issue date in order to obtain a favorable credit rating from Dun and Bradstreet would not be significant. See O. P. P. Holding Corporation, 30 B. T. A. 337, affd. (C. A. 2) 76 F. 2d 11; Sabine Royalty Corporation, 17 T. C. 1071; Ruspyn Corporation, 18 T. C. 769. Decision will be entered for the 'petitioner. See, e. g. Bazley v. Commissioner, 331 U. S. 737. See Sand Springs Railway Co., 21 B. T. A. 1291. 1310. Woodward v. United States, (C. A. 8) 208 F. 2d 893, affirming (N. D., Iowa) 106 F. Supp. 14. Cf. Thompson v. Commissioner, (C. A. 3) 205 F. 2d 73, reversing 18 T. C. 361. See Tribune Publishing Co., 17 T. C. 1228, 1235 ; Estate Planning Corp. v. Commissioner, (C. A. 2) 101 F. 2d 15.